UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DENNIS PATRICK SWEENEY, JR., and
HEATHER RENEE COPHER-SWEENEY,
On Behalf of Themselves and All Others
Similarly Situated,

    Plaintiffs,

v.                                                                             Case No. 8:14-CV-3201-T-17EAJ

KIMBERLY-CLARK CORPORATION,
WAL-MART STORES, INC., and
ROCKLINE INDUSTRIES, INC.,

    Defendants.
_____/

## ORDER

This matter comes before the Court pursuant to Defendants' individual Motions to Dismiss, (Docs. ## 41, 42, 47), filed March 26 and 30, 2015, Notices of Supplemental Authority, (Docs. ## 47, 48), filed April 1, 2015, Plaintiffs' Responses in Opposition, (Docs. ## 51, 54, 57), filed April 9 and 20, 2015, and Defendants' individual Replies, (Docs. ## 62, 63), filed May 22, 2015. The motions are **GRANTED in PART**.

## BACKGROUND

Plaintiffs commenced this action December 24, 2014. (Doc. # 1). Plaintiffs allege Defendants KIMBERLY-CLARK CORPORATION ("Kimberly-Clark"), WAL-MART STORES, INC. ("Wal-Mart"), and ROCKLINE INDUSTRIES, INC. ("Rockline"), engaged in "deceptive, improper, unlawful, or tortious conduct in the design, manufacturing, marketing, distribution, and/or sale of flushable wipes." (Doc. # 1 at 1). These "flushable wipes" include "wipe products marketed and advertised by manufacturers, distributors,

and/or sellers as suitable or able to be flushed down a toilet without causing harm to plumbing, sewer, and/or septic systems." (Doc. # 1 at 1–2).

As alleged, Kimberly-Clark manufactures, markets, and sells flushable and non-flushable wipe products under the Cottonelle, Scott Naturals, Pull-Ups, U by Kotex, and Poise brands. (Doc. # 1 at 2). Similarly, Rockline designs, manufactures, markets, and sells flushable and non-flushable wipe products, particularly the flushable and non-flushable wipe products sold under Wal-Mart's private label Equate. (Doc. # 1 at 3). Wal-Mart and Sam's Club market those Equate Flushable Wipes as an alternative to non-flushable, pre-moistened fabric wipes which are not designed for disposal in a toilet, and similarly carries the Kimberly-Clark brand wipes. (Doc. # 1 at 2–3). These flushable wipes—both branded and private label—sell at a premium price between approximately three and fifteen times greater than the non-flushable wipe alternatives. (Doc. # 1 at 3).

Plaintiffs allege despite Defendants representations, the "flushable wipes are not sewer and septic safe and do not break apart after flushing...[and] remain intact and often cause clogging and/or other problems in consumer's plumbing and sewer and/or septic systems" resulting in damages. (Doc. # 1 at 3). As Plaintiffs simplify the matter, the "flushable wipes are defective because they are not 'flushable' and 'sewer and septic safe.'" (Doc. # 1 at 3; 7–24). Due to these misrepresentations, Plaintiffs allege consumers were "induced and deceived into purchasing" the flushable wipes, and "[b]ut for" those misrepresentations, Plaintiffs and consumers would not have purchased the flushable wipes, or would not have paid the premium price for flushable wipes over the alternative. (Doc. # 1 at 3–4). Despite numerous complaints, Defendants allegedly have not remediated the problem and continue to deceive consumers. (Doc. # 1 at 4; 7–24).

Plaintiffs' specific plumbing problems began on or about November 13, 2011. (Doc. # 1 at 24). Sometime between December 24, 2010, and November 13, 2011, Plaintiffs purchased Cottonelle and Equate wipes from Wal-Mart and Sam's Club locations in Tampa, Florida. (Doc. # 1 at 24). These wipes were primarily used for potty training and Plaintiffs allege they followed the directions on the products' packaging when disposing of the respective wipes. (Doc. # 1 at 24). With continued use over an unknown period of time, Plaintiffs "noticed difficulty flushing the toilet in one of their bathrooms. [...] when the toilet was flushed, raw sewage would flood out of the drain and into the shower located in th[at] bathroom." (Doc. # 1 at 24). A plumbing company examined the home's plumbing system and determined the main plumbing line was clogged due to the wipes failing to break up and, rather, "cak[ing] together" to block the line, and Plaintiffs paid approximately $370 for the diagnosis and repair work. (Doc. # 1 at 25).

Plaintiffs seek to represent the "Cottenelle Class," which consists of "[a]ll persons residing in the State of Florida who purchased Kimberly-Clark flushable wipes, including Cottonelle brand flushable wipes," as well as the "Equate Class," which consists of "[a]ll persons residing in the State of Florida who purchase Equate brand flushable wipes." (Doc. # 1 at 26–27). The causes of action Plaintiffs seek to pursue against the Defendants include: 1) Breach of Express Warranty; 2) Breach of Implied Warranty of Merchantability; 3) Breach of Implied Warranty of Fitness for a Particular Purpose; 4) Negligence; 5) Negligent Misrepresentation; 6) Negligent Failure to Warn; 7) Strict Liability Failure to Warn; 8) Violations of Florida's Deceptive and Unfair Trade Practices Act; and 9) Unjust Enrichment. (Doc. # 1 at 31–42). Based on these alleged violations of law, Plaintiffs seek injunctive, compensatory, and punitive relief. (Doc. # 1 at 42–43).

## **LEGAL STANDARD**

Under Federal Rule of Civil Procedure 8(a)(2), a plaintiff's complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." A defendant may move to dismiss a complaint under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim on which relief can be granted." To survive a Rule 12(b)(6) motion to dismiss, a plaintiff's complaint must include "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a [Rule] 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide grounds of his [or her] entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (second alteration in original) (citation omitted) (internal quotation marks omitted).

On a Rule 12(b)(6) motion to dismiss, a court must "accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Alvarez v. Attorney Gen. for Fla., 679 F.3d 1257, 1261 (11th Cir. 2012). Courts follow a two-prong approach when considering a motion to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009)). If "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," then the claim meets the "plausibility requirement," but it requires "more than a sheer possibility" that the allegations are true.

4

Id. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned [...] accusation." Id. (quoting Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265 (1986)).

Rule 9(b) requires fraud allegations to be plead "with particularity." "In a complaint subject to Rule 9(b)'s particularity requirement, plaintiffs retain the dual burden of providing sufficient particularity as to the fraud while maintaining a sense of brevity and clarity in the drafting of the claim, in accord with Rule 8." Wagner v. First Horizon Pharm. Corp., 464 F.3d 1273, 1278 (11th Cir. 2006). "Particularity means that a plaintiff must plead facts as to time, place and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." United States v. McInteer, 470 F.3d 1350, 1357 (11th Cir. 2006). See also Ziemba v. Cascade Intl., Inc., 256 F.3d 1194, 1202 (11th Cir. 2001) (citation omitted); Garfield v. NDC Health Corp., 466 F.3d 1255, 1262 (11th Cir. 2006). "This means the who, what, when, where, and how: the first paragraph of any newspaper story." Garfield, 466 F.3d at 1262 (citations omitted). "Failure to satisfy Rule 9(b) is a ground for dismissal of a complaint." Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005), cert. denied, 127 S. Ct. 42, 166 L. Ed. 2d 18 (2006).

## DISCUSSION

I. **Defendant Kimberly-Clark's Motion to Dismiss**

A. **Plaintiffs' Standing**

As a threshold matter, Plaintiffs must have standing to pursue their causes of action. See Clements v. LSI Title Agency, Inc., 779 F.3d 1269, 1273 (11th Cir. 2015); see also Kawa Ortho., LLP v. Sec., U.S. Dept. of the Treasury, 773 F.3d 243, 245 (11th Cir.

2014) (quoting Bochese v. Town of Ponce Inlet, 405 F.3d 964, 974 (11th Cir. 2005)). Defendant Kimberly-Clark cites Plaintiffs' failure to allege which of the six wipes Plaintiffs purchased and ultimately caused the damage to Plaintiffs' property. (Doc. # 41 at 14). Plaintiffs argue the pleading requirements for standing are met via Plaintiffs' "sufficiently pled factual allegations," and state Defendant Kimberly-Clark failed to provide any mandatory authority requiring Plaintiffs' inclusion of the precise wipe or wipes purchased. (Doc. # 51 at 10). Without identifying the wipe or wipes responsible for Plaintiffs' property damage, Plaintiffs lack standing and cannot proceed as class representatives for the remaining wipes Plaintiffs did not purchase.

Plaintiffs correctly assert Article III standing requires demonstration that: 1) the plaintiff suffered an injury in fact; 2) the injury was causally connected to the defendant's conduct; and 3) the injury will likely be redressed by a judgment in the plaintiff's favor. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–561 (1992). Plaintiffs' Complaint, however, identifies two separate subclasses of allegedly flushable wipes—the Cottenelle and Equate Classes—without identifying which of the six different types Plaintiffs purchased. (Doc. # 1 at 26–27). Without identifying the specific product responsible for Plaintiffs' damages, Plaintiffs cannot satisfy the causal connection prong—that Plaintiffs' injury was causally connected to Defendant Kimberly-Clark's conduct. Lujan, 504 U.S. at 555. Accordingly, Defendant Kimberly-Clark's Motion to Dismiss is **GRANTED**, and Plaintiffs may file an Amended Complaint on or before October 9, 2015.

### B. "First-to-File" Rule

The Court reserves on the "first-to-file" issue until Plaintiffs file their Amended Complaint identifying the specific flushable wipes responsible for the alleged damages.

## II. Defendant Rockline's Motion to Dismiss

### A. Plaintiffs' Standing

Similar to Defendant Kimberly-Clark's Article III standing argument, Defendant Rockline argues Plaintiffs' Complaint fails to specifically identify which wipes were ultimately responsible for the damages Plaintiffs suffered. (Doc. # 42 at 7–9). As previously ruled, Plaintiffs have not satisfied Article III standing for either the purchase of the particular flushable wipe or wipes. Absent satisfying Article III standing, it follows that Plaintiffs failed to identify the wipe or wipes responsible for Plaintiffs', and therefore the class', damages. Accordingly, Defendant Rockline's Motion to Dismiss is **GRANTED**, and Plaintiffs may file an Amended Complaint on or before October 9, 2015.

### B. Claim for Breach of Warranties

Defendant Rockline argues Plaintiffs' fail to state causes of action for breach of warranties. Specifically, Rockline first argues Plaintiffs failed to allege privity between themselves and the putative class, and Rockline. (Doc. # 42 at 9). Rockline next argues the absence of an alleged written or oral contract and accompanying terms, as well as the failure to allege the actual sale of the wipes, renders Plaintiffs' breach of warranties allegations deficient. (Doc. # 42 at 9–10). Plaintiffs counter this argument with the relaxed requirement when an express warranty is intended to benefit subsequent owners. (Doc. # 57 at 8) (citing Horton v. Woodman Labs, Inc., 2014 WL 1329355, *3 (M.D. Fla. 2014)); Mesa v. BMW of N. Am., LLC, 904 So.2d 450, 457–458 (Fla. Dist. Ct. App. 2005). Plaintiffs' causes of action fall within the "subsequent owners" exception.

Next, Defendant Rockline argues Plaintiffs did "not allege they provided notice to Rockline." (Doc. # 42 at 10). Plaintiffs counter that "[w]here [a defendant] ha[s] ample notice of the defect in the products well before the lawsuit was filed, and, indeed allegedly well before [a plaintiff itself] did, and [a defendant] chose not to remedy those defects, no purpose would be served by requiring pre-litigation notice." (Doc. # 57 at 9) (quoting In Re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig., 155 F.Supp.2d 1069, 1110–1111 (S.D. Ind. 2001)). Plaintiffs sufficiently pled plausible facts that, if accepted as true—as they must be at this stage of litigation absent conclusory statements—substantiate Rockline's prior notice of, and choice not to remedy, the defects. (Doc. # 1, ¶¶51–69).

Finally, Defendant Rockline argues Plaintiffs' cause of action for breach of implied warranty for a particular purpose, i.e., Count III, fails because the flushable wipes were used for an ordinary—rather than a legally distinct particular—purpose. (Doc. # 42 at 10). Plaintiffs' allege this theory under Florida law, (Doc. # 1 at ¶114), which states:

> Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified under the next section an implied warranty that the goods shall be fit for such purpose.

Fla. Stat. § 672.315 (2010).[1] "A 'particular purpose' differs from an ordinary purpose in that [the particular purpose] envisages a specific use by the buyer which is peculiar to the nature of [the buyer's] business." Royal Typewriter Co., a Div. of Litton Business Systems, Inc., v. Xerographic Supplies Corp., 719 F.2d 1092, 1100 (11th Cir. 1983). In the Official

---

[1] The Court reviewed Florida Statute Section 672.315 and Florida's implied warranty for fitness for a particular purpose has not changed for any time periods relevant to this case.

8

Comments to Uniform Commercial Code Section 2-315, upon which Florida Statute Section 672.315 is principally based, the second purpose of changes states:

> A "particular purpose" differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are those envisaged in the concept of merchantability and go to the uses which are customarily made of the goods in question. For example, shoes are generally used for the purpose of walking upon ordinary ground, but a seller may know that a particular pair was selected to be used for climbing mountains.

U.C.C. § 2-315 note on purposes of changes (AM. LAW INST.). Florida Statute Section 672.313 concerns express warranties, upon which Count I of Plaintiffs' Complaint is based. "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." Fla. Stat. 672.313(1)(b). Comparing Florida Statute Sections 672.315 and 672.313, as well as the comments from the American Law Institute, the Court finds if any warranty was created under Plaintiffs' theories of liability, it would be an express warranty and not an implied warranty for a particular purpose. These were not general wipes (or shoes under the U.C.C example), but rather "flushable wipes," which were "envisaged in the concept of merchantability and go to the uses which are customarily made of the goods in question." Therefore, Count III is **DISMISSED with PREJUDICE.**

### C. Economic Loss Doctrine

Defendant Rockline argues Plaintiffs' causes of action for negligence, negligent misrepresentation, negligent failure to warn, and strict liability failure to warn (Counts IV–VII) are barred by operation of the economic loss rule. (Doc. # 42 at 10–11). Plaintiffs argue the property damage—approximately $370 to unclog and repair their plumbing

system—is not legally encompassed in economic losses. (Doc. # 57 at 11) (citing Aprigliano v. American Honda Motor Co., Inc., 979 F.Supp.2d 1331 (S.D. Fla. 2013)).

Florida's economic loss rule bars tort claims arising from contract for purely economic losses. Premix-Marbletite Mfg. Corp v. SKW Chemicals, Inc., 145 F.Supp.2d 1348, 1359 (S.D. Fla. 2001). The relevant inquiry when a plaintiff alleges damages to other property is whether the damage to other property was limited to the finished product. Id. (citing Casa Clara Condo. Assoc. v. Charley Toppino and Sons, Inc., 620 So.2d 1244, 1247 (1993). As alleged, Plaintiffs' damages are not purely economic, and by pleading damage to property separate and apart from the products themselves, Florida's economic loss rule does not bar Plaintiffs' tort causes of action.

### D. Negligence, Negligent Failure to Warn, and Strict Liability

Defendant Rockline argues Plaintiffs failed to sufficiently plead causes of action in negligence. (Doc. # 42 at 11–12). Specifically, the "purely economic danger Plaintiffs allege" is not the type of risk the law places within the "zone of risk" defining general standards of care. (Doc. # 42 at 12) (citing Monroe v. Sarasota County School Bd., 746 So.2d 530, 538 (Fla. Dist. Ct. App. 1999)). Further, Rockline argues Plaintiffs' failed to plead Defendant Rockline's knowledge that the wipes were defective or unreasonably dangerous at the time of manufacture, sale, custody, or control. (Doc. # 42 at 12). Finally, Rockline argues Plaintiffs' failure to identify which product caused Plaintiffs' plumbing problems renders the Complaint deficient. (Doc. # 42 at 12–13).

The Court must analyze the causes of action as pled at this stage—whether Plaintiffs appropriately represent a putative class and the effect of that representation is left to separate analysis. Here, Plaintiffs have sufficiently pled the negligence, negligent

failure to warn, and strict liability claims <u>with the exception of which product caused the damage</u>. As discussed, <u>supra</u>, Plaintiffs have alleged potentially six different wipes were responsible for the damages, but did not identify which wipes caused the damage. It logically follows that if Plaintiffs' Complaint is deficient for failing to identify the specific wipe or wipes, Plaintiffs' pleadings as they relate to damages must identify the wipe or wipes responsible for the damages. To the extent Plaintiffs failed to identify the wipes for purposes of damages, Defendant Rockline's Motion to Dismiss is **GRANTED**, and the Court affords Plaintiffs leave to amend on or before October 9, 2015.

### E. Negligent Misrepresentation

Defendant Rockline argues Plaintiffs failed to allege with sufficient particularity their negligent misrepresentation cause of action. (Doc. # 42 at 13–15). Specifically, Rockline argues Plaintiffs' use of "and/or" referring to "Rockline and/or Wal-Mart," the vague date range occurring "at least since four years prior" to the Complaint's filing date, the failure to identify which product caused what damage, the "and/or" use of locations of purchase, the vague allegations concerning Rockline's knowledge of the misrepresentations, and Rockline's unspecific gains from the misrepresentations, violate the particularity requirement of Federal Rule of Civil Procedure 9(b). Plaintiffs oppose each argument and contend they met the 9(b) pleadings requirement.

Plaintiffs fail to plead with sufficient particularity their cause of action for negligent misrepresentation. Plaintiffs' repeated use of "and/or" fails to notify the litigants exactly which party did, or failed to do, what and where. With respect to when Defendants made the misrepresentations, Plaintiffs define the precise date range from December 24, 2010, through November 13, 2011. (<u>See</u> Doc. # 57 at 16). This date range is sufficiently plead,

and should be unambiguously incorporated in the negligent misrepresentation cause of action should Plaintiffs choose to replead. Plaintiffs sufficiently pled matters relating to the remainder of Defendant Rockline's 9(b)-pleadings-requirement arguments.

### F. Florida's Deceptive and Unfair Trade Practice's Act

Defendant Rockline argues Plaintiffs failed to state a claim for a violation of Florida's Unfair and Deceptive Trade Practices Act ("FDUTPA"). Essentially, Rockline argues the substance of the allegations is little more than a recitation of the elements with general allegations. Plaintiffs respond by grouping their negligent misrepresentation analysis with their FDUTPA analysis, glazing over Rockline's arguments with superficial argument that the pleadings standard is met. As has been held in the Middle District of Florida, a claim under FDUTPA "does not arise merely from an alleged breach of warranty or a breach of contract claim." Horton v. Woodman Labs, Inc., 2014 WL 1329355, *4 (M.D. Fla. Apr. 2, 2014). Plaintiffs' FDUTPA cause of action is conclusory and Plaintiffs fail to distinguish it from the breaches of warranty and contractual claims. Count VIII is **DISMISSED without prejudice**, and the Court affords Plaintiffs leave to amend on or before October 9, 2015, distinguishing the FDUTPA claim.

### G. Unjust Enrichment

Defendant Rockline argues Plaintiffs' unjust enrichment cause of action is duplicative of the contract and tort claims, and must be dismissed due to the available remedies for those respective causes of action. (Doc. # 42 at 22–24). Plaintiffs contend at this stage the Court should afford Plaintiffs' the ability to pursue this matter in the alternative, especially due to the collective Defendants' opposition to all of Plaintiffs' legal theories. (Doc. # 57 at 17–18). At this stage the Court will allow Plaintiffs to plead unjust

enrichment in the alternative, and will address the duplicative nature of the allegations and the operation of the economic loss rule—if applicable—at summary judgment.

### III. Defendant Wal-Mart's Motion to Dismiss

#### A. Shotgun Pleading

Wal-Mart argues the Court should dismiss Plaintiffs' Complaint as an impermissible "shotgun" pleading. (Doc. # 47 at 9–10). For the reasons discussed, supra, the Court has already addressed pleading deficiencies, and, therefore finds unnecessary an analysis of Plaintiffs' operative Complaint. Should Plaintiffs choose to amend and Wal-Mart determine an amended complaint is still a "shotgun" pleading, the Court will address the merits on motion.

#### B. Notice for Warranty Causes of Action

The Court finds Plaintiffs pled sufficient facts that, when eliminating all conclusory allegations and taken as true, provide sufficient notice for the purposes of bringing a breach of warranty cause of action. See discussion, supra, II(B).

#### C. Economic Damages

The Court finds Plaintiffs' pled damages are not purely economic, and by pleading damage to property separate and apart from the products themselves, Florida's economic loss rule does not bar Plaintiffs' tort causes of action. See discussion, supra, II(C).

#### D. Negligent Misrepresentation

The Court undertook analysis of the negligent misrepresentation, supra, II(E), and finds similarly Plaintiffs' pleading is deficient for the reasons discussed, supra.

### E. FDUTPA

The Court undertook analysis of the FDUTPA claim, <u>supra</u>, II(F), and finds similarly Plaintiffs' pleading is deficient for the reasons discussed, <u>supra</u>.

### F. Unjust Enrichment

The Court undertook analysis of the unjust enrichment claim, <u>supra</u>, II(G), and declines to dismiss the claim as duplicative at this stage of litigation. <u>See</u> discussion, <u>supra</u>, II(G).

Accordingly, it is **ORDERED** that Plaintiffs' Complaint is dismissed without prejudice for, and consistent with, the above discussion. Plaintiffs shall have until October 9, 2015, to file an amended pleading. Plaintiffs' cause of action for Breach of Implied Warranty of Fitness for a Particular Purpose, Count III, is dismissed with prejudice.

The Clerk of Court is directed to terminate Defendant Rockline's Motion to Strike, (Doc. # 43), and Defendant Rockline's Motion for More Definite Statement, (Doc. # 44), as both motions are moot with the dismissal of the Complaint.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this <u>15th</u> day of September, 2015.

_____
ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies to: All Counsel and Parties of Record