**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA**

| | |
|---|---|
| DENNIS PATRICK SWEENEY, JR. and ) | . |
| HEATHER RENEE COPHER-SWEENEY, ) | Civil Action No. 8:14-cv-3201-EAK-EAJ |
| ) | |
| On Behalf of Themselves And All Others ) | |
| Similarly Situated, ) | |
| ) | |
| Plaintiffs; ) | **FIRST AMENDED** |
| ) | |
| v. ) | **CLASS ACTION COMPLAINT** |
| ) | |
| KIMBERLY-CLARK CORPORATION, ) | |
| WAL-MART STORES, INC., and ) | **INJUNCTIVE RELEIF SOUGHT** |
| ROCKLINE INDUSTRIES, INC., ) | |
| ) | **JURY TRIAL REQUESTED** |
| Defendants. ) | |
| ) | |

Plaintiffs, Dennis Patrick Sweeney, Jr. and Heather Renee Copher-Sweeney, ("the Sweeneys" or "Plaintiffs"), on behalf of themselves and all others similarly situated, file this First Amended Class Action Complaint amending the Class Action Complaint filed on December 24, 2014. [Doc. 1]. Plaintiffs file this First Amended Class Action Complaint pursuant to Rule 15 of the Fed.R.Civ.P., Local Rule 4.01, and the Court's Order of September 15, 2015. [Doc. 69]. Plaintiffs amend the Class Action Complaint as follows and allege upon information and belief, formed after an inquiry reasonable under the circumstances, except as to those allegations pertaining to the named Plaintiffs and for which Plaintiffs allege on personal knowledge.

## NATURE OF THE ACTION

1.      This class action is brought against Defendants, Kimberly-Clark Corporation ("Kimberly-Clark"), Wal-Mart Stores, Inc. ("Walmart"), and Rockline Industries, Inc.

1

("Rockline"), (collectively referred to as, "Defendants"), to recover for the harm caused by Defendants' deceptive, improper, unlawful, or tortious conduct in the design, manufacturing, marketing, distribution, and sale of flushable wipes. Flushable wipes include all wipe products marketed and advertised by manufacturers, distributors, or sellers as suitable or able to be flushed down a toilet without causing harm to plumbing, sewer, or septic systems.

2.      Defendant, Kimberly-Clark designs, manufactures, packages, markets, and sells several brands and types of flushable and non-flushable wipe products, including its Cottonelle brand of flushable wipes.   Included in its Cottonelle line are moist wipes marketed to be "flushable."   In addition to its Cottonelle brand, Kimberly-Clark manufactures other brands of flushable wipes, including Scott Naturals, Pull-Ups, U by Kotex, and Poise.

3.      Walmart is the largest retailer in the world.  It operates retail stores throughout the United States and also sells products online via its website: www.walmart.com.   Walmart markets and sells many national brands of flushable wipes, including Cottonelle.

4.      Upon information and belief, about 40 percent of products sold by Walmart are private label store brands, including its Equate brand.

5.      Under its private label store brand, Equate, Walmart designs, packages, markets, and sells in its stores located in the United States and via its website, various flushable wipes, including Equate Flushable Wipes (the "Equate Flushable Wipes").

6.      Walmart markets Equate Flushable Wipes as a quick and easy disposable alternative to non-flushable pre-moistened fabric wipes that are not supposed to be flushed down a toilet.  In fact, Walmart sells other Equate branded moist wipes and cleaning products that are not meant to be flushed.

7.    In its Sam's Club stores, Walmart sells national branded flushable wipes, including Cottonelle, as well as, private label store brands, including Member's Mark brand products.  Walmart designs, packages, markets, and sells Member's Mark Flushable Wipes in its Sam's Club stores in the United States.

8.    Defendant, Rockline, designs, manufactures, packages, markets, and sells several brands and types of flushable and non-flushable moist wipe products.  Among Rockline's moist wipe products that are marketed to be flushable are wipes branded as Walmart's Equate private label store brand, which Rockline designs, manufacturers, packages, and markets under terms of a contract with Walmart.

9.    At the point of sale, Defendants' flushable wipes cost significantly more than other pre-moistened wipes that are not marketed as flushable and that are not supposed to be flushed down a toilet. For example, Cottonelle Fresh Care Flushable Cleansing Cloths cost approximately $0.05 per wipe, while other Kimberly-Clark wipes not marketed to be flushable, (e.g.) Pampers Natural Clean Wipes, cost approximately $0.02 per wipe.  Equate Flushable Wipes cost approximately $0.05 per wipe, while Equate wipes not marketed to be flushable, (e.g.) Equate Everyday Clean Fragrance Free Wipes, cost approximately $0.02 per wipe.

10.    Contrary to Defendants' representations, these flushable wipes are not sewer and septic safe and do not break apart after flushing.  Rather, they remain intact and often cause clogging or other problems in consumer's plumbing and sewer or septic systems, resulting in hundreds, even thousands of dollars in damages.  Simply put, Defendants' flushable wipes are defective because they are not "flushable" and "sewer and septic safe."

11.    Plaintiffs, Class members, and other consumers purchased defective flushable wipes designed, manufactured, packaged, marketed, distributed, and/or sold by Defendants as

safe to be flushed. Through the ordinary and directed use of flushable wipes, Plaintiffs, Class members, and other consumers experienced plumbing issues, including clogged toilets, clogged pipes, flooding of portions of their homes, or other adverse collateral plumbing problems.

12.     Due to Defendants' misrepresentations that these wipes are flushable and sewer and septic safe, consumers, like Plaintiffs, were induced and deceived  into purchasing these flushable wipes that are defective and do not perform as represented and guaranteed by Defendants.  But for Defendants' misrepresentations, Plaintiffs would not have expended money to purchase these flushable wipes or, at the very least, Plaintiffs would not have paid more money for flushable wipes than the non-flushable alternatives.

13.     But for Defendants' actions, and had Plaintiffs and Class members known of the defective nature of Defendants' flushable wipes, Plaintiff and Class members would not have purchased or used the flushable wipes in their homes and risked damaging their home's plumbing systems, or, worse, causing damage in their homes due to backups caused by the use of Defendants' defective flushable wipes

14.     Despite numerous complaints that Defendants' flushable wipes do not perform as warranted and marketed from consumers and various state and local sewer authorities around the US, flushable wipes designers, manufacturers, marketers, and sellers, including Defendants, have been unwilling to remove the false and misleading claims regarding flushability and plumbing, sewer, and septic safety, and consumers continue to purchase these products under the false pretenses created by Defendants.

**THE PARTIES**

15.     Plaintiffs, Dennis Patrick Sweeney, Jr., and Heather Renee Copher-Sweeney, are married, adult citizens of the State of Florida, and at all times relevant to this action have resided at 3109 West Kensington Avenue, Tampa, Hillsborough County, Florida.

16.     Defendant, Kimberly-Clark, is a Delaware corporation (traded on the New York Stock Exchange under the ticker symbol "KMB"), is headquartered in Dallas, Texas, and together with its subsidiaries, manufacturers, markets, and sells personal care, consumer tissue, and health care products worldwide, and at all times relevant to this action has done so within Florida and this Judicial District. The company operates in four (4) segments: Personal Care, Consumer Tissue, K-C Professional, and Health Care. The Consumer Tissue segment provides facial and bathroom tissue, paper towels, napkins, and related products under the Kleenex, Scott, Cottonelle, Viva, Andrex, Scottex, Hakle, and Page brands.

17.     Defendant, Walmart, is a Delaware corporation (traded on the New York Stock Exchange under the ticker symbol "WMT"), is headquartered in Bentonville, Arkansas, and conducts business, markets, and sells goods worldwide, and at all times relevant to this action has done so within Florida and this Judicial District. Walmart is a multinational retail corporation that is divided into three (3) operating divisions: Walmart Stores U.S., Sam's Club, and Walmart International. Walmart owns and operates chains of large discount department stores, supermarkets, and warehouse stores, including Walmart Supercenter(s), Walmart Neighborhood Market(s), and Sam's Club(s). The world's largest company by revenue, according to the Fortune Global 500 list in 2014, Walmart is the largest retailer in the world. Upon information and belief, about 40 percent of products sold in Walmart stores are private

label store brands, which are products offered by Walmart and produced through contracts with manufacturers.  In the U.S. and Canada, Walmart brands include Great Value and Equate.

18.     Rockline, a Wisconsin corporation, is headquartered in Sheboygan, Wisconsin, and designs and manufactures a wide variety of consumer products that are distributed and sold worldwide, and at all times relevant to this action has done so within Florida and this Judicial District.  According to their website (www.rocklineind.com), Rockline's primary product line is wet wipes, including flushable wipes.  Among other product lines offered, Rockline offers "contract manufacturing" for various retailers. Rockline is the contract manufacturer for the Walmart Equate Brand.

19.     Defendants, upon becoming and continuing to be involved with the design, manufacture, distribution, packaging, advertising, marketing, or sale of flushable wipes, knew or should have known that their representations regarding flushable wipes were false and misleading.

## JURISDICTION AND VENUE

20.     This Court has original jurisdiction over this matter, pursuant to 28 U.S.C. §1332(d), in that the matter in controversy exceeds $5 million, exclusive of interest and costs, and is a class action of more than 100 potential Class members in which Plaintiffs are citizens of Florida while at least one Defendant is a citizen of a different state.

21.     This Court has personal jurisdiction over Defendants because Defendants have established substantial contacts, ties, and relations to this Judicial District.

22.     Venue is proper in this district pursuant to 28 U.S.C. §1391(a), because Plaintiffs reside within this district and Defendant(s) reside, are found, have their principle place of business, have an agent, or have transacted substantial business within the Middle District of

Florida within the meaning of 28 U.S.C. §1391(a) as defined in 28 U.S.C. §1391(c), and because a substantial part of the events giving rise to the claims alleged herein occurred in the Middle District of Florida.

### SUBSTANTIVE ALLEGATIONS (FACTS COMMON TO ALL CLAIMS)

23.     The flushable wipes industry has experienced exceptional growth since flushable wipes became widely available in the 1980s.  Some predictions call for the total market to grow at a rate of 12.1% annually to reach $2.4 billion by 2018.

24.     This market includes pre-moistened wipes that are designed, manufactured, packaged, marketed, distributed, and sold to consumers as being "flushable" or safe to a consumer's plumbing system, sewer or septic when the wipes are flushed down the consumer's toilet.

25.     Upon flushing down the toilet, standard toilet paper breaks apart in a matter of seconds and fully dissolves in a matter of minutes.

26.     In contrast to standard toilet paper, studies show that it takes several minutes to hours for flushable wipes to break apart after flushing.  Full dissolution, if at all, takes much longer.

27.     The break down time for flushable wipes is far longer than the amount of time flushed items are expected to remain in, or travel through, a home plumbing system.

28.     There are currently no legally enforceable requirements that a product must meet in order to claim it is "flushable."  Only voluntary industry guidelines exist, which may be followed by a manufacturer or distributor if they so choose.

29.     These voluntary industry guidelines are created by the Association of the Nonwoven Fabrics Industry ("INDA"), an industry organization dedicated to promoting the interests of the industry and advancing their members' commercial success.

30.     In its *Guidelines for Assessing the Flushability of Disposable Nonwoven Products*, Third Edition released June 2013, the INDA, Association of the Nonwoven Fabrics Industry ("INDA") stated: "Any product that is marketed as 'flushable' [should be able to] be flushed down the wastewater system without adversely impacting plumbing or wastewater infrastructure and operations."

31.     In discussing the test used to determine if a flushable wipe can be flushed down a household toilet and clear drainlines in a home plumbing system, the INDA stated in its *Guidance Document for Assessing the Flushability of Nonwoven Consumer Products*, First Edition released in June 2008:

> It is very difficult to define precisely "properly maintained" pipes or "fit for use" piped due to the complex nature and variation of conditions inherent in wastewater drainlines and sewers.  <u>There are legitimate concerns about whether the level of agitation present in the dispersability tests and the perfect condition of the laboratory test pipe apparatus contained in these guidelines provides the best base upon which to assess whether products will pass through and not clog pipes that are compromised, but still fit for use.</u>

Emphasis added.

32.     In its *Guidelines for Assessing the Flushability of Disposable Nonwoven Products*, Third Edition released June 2013, in regard to flushable wipes the INDA stated:  "These products can however cause challenges for both property owners and the wastewater industry if in fact they are not 'flushable', because they may cause clogging, blockages or equipment failure in the wastewater conveyance and treatment systems."

33.     Defendant, Kimberly-Clark is a member of the INDA.

34.     Defendant, Kimberly-Clark participated in the INDA study to assess the flushability of flushable wipes.

35.     Defendant, Rockline is a member of the INDA.

36.     Defendant, Rockline participated in the INDA study to assess the flushability of flushable wipes.

**Cottonelle Brand Flushable Wipes**

37.     Among many other brands, Defendant, Kimberly-Clark, designs, manufactures, packages, markets, distributes, and sells its Cottonelle brand of flushable wipes.  Included in this brand are versions of flushable wipes marketed and sold as Cottonelle Fresh Care Flushable Cleansing Cloths, Cottonelle Fresh Care Flushable Moist Wipes, and Cottonelle Ultra Comfort Care Flushable Cleansing Cloths.

38.     On its website (www.cottonelle.com) where Kimberly-Clark markets these products to the public, Kimberly-Clark describes its Cottonelle Fresh Care Flushable Cleansing Cloths as "using a patented dispersible technology, which means that when used as directed they break up after flushing and clear properly maintained toilets, drainlines, sewers, pumps, and septic and municipal treatment systems."

39.     On its Cottonelle website, where it markets these products to the public, in a section titled "About this item," Kimberly-Clark makes the following guarantees or representations:

> Our Fresh Care Flushable Cleansing Cloths feature SafeFlush Technology, so they not only offer you a confident clean but also start to break down immediately after flushing.
>
> The Flushability of Cottonelle Wipes
> Cottonelle Flushable Cleansing Cloths use a patented dispersible technology that allows them to lose strength and break up after flushing.

Emphasis added.

40.     On its Cottonelle website where it markets these products to the public, in a section titled "Product Details," Kimberly-Clark makes the following guarantees or representations regarding Cottonelle wipes:  "Flushable," "Break up after flushing," "Sewer – and septic – safe."

41.     In another section on its Cottonelle website, where it markets these products to the public, titled "Frequently Asked Questions," Kimberly-Clark makes the following guarantees or representations:

**How can I be sure it is safe to flush Cottonelle® Flushable Cleansing Cloths?**
The flushability of Kimberly-Clark® products is tested in accordance with trade association guidelines. These guideline tests demonstrate that when used as directed, our wipes clear properly maintained toilets, drainlines, sewers and pumps, and are compatible with on-site septic and municipal treatment. Cottonelle® Flushable Cleansing Cloths are flushable due to patented technology that allows them to lose strength and break up when moving through the system after flushing. Watch our video to learn more about the tests that Cottonelle® flushable wipes go through to ensure their flushability.

**Will Cottonelle® Flushable Cleansing Cloths break down in my septic system?**
Flushable Cleansing Cloths are designed to safely break down in home septic systems and will not affect the normal bacterial activity in a septic system. Watch our video to learn more about the tests that Cottonelle® flushable wipes go through to ensure their flushability.

**What is SafeFlush Technology™? Is it different from the previous technology?**
At Cottonelle®, we know that flushability is important, and continuously improving our products is, too. We've always had the most dispersible, best performing, flushable wipes. Our new product improvement sets the bar even higher. Now, only Cottonelle® Flushable Cleansing Cloths give you a confident clean and have SafeFlush Technology™, so they start to break down immediately after flushing.

42.     Also on its website where Kimberly-Clark markets and sells these products to the public, in a section titled "Warnings," Kimberly-Clark warns of only the following risks: "To avoid suffocation, keep plastic bags away from children [a]nd pets.  This bag not intended for reuse.  Do not flush this bag."

43.     On the product packaging for the Cottonelle Fresh Care Flushable Cleansing Cloths, the phrase "flushable cleansing cloths" is displayed prominently.   Also prominently appearing on the front of the product's package is a logo guaranteeing the wipes to be "SEWER AND SEPTIC SAFE."  See below for a true and accurate representation of the front panel of the package for Cottonelle Fresh Care Flushable Cleansing Cloths and an enlarged representation of the logo guaranteeing the product to be sewer and septic safe.





44.     On the back of the product packaging for the Cottonelle Fresh Care Flushable Cleansing Cloths, Kimberly-Clark states, represents, and guarantees that "COTTONELLE

FRESH CARE Flushable Cleansing Cloths break up after flushing.  See below for a true and accurate representation of the back panel of the package for Cottonelle Fresh Care Flushable Cleansing Cloths and an enlarged representation of the statement, representation and guarantee that the wipes "break up after flushing."





45.     On the product packaging for Cottonelle Fresh Care Flushable Moist Wipes, Kimberly-Clark represents, states, and guarantees, "Safe for sewer and septic systems" and "you can flush Cottonelle Fresh Care wipes with confidence because they break up like toilet paper after flushing."  This packaging also displays a circular logo representing, stating, and guaranteeing that this wipe product "BREAKS UP AFTER FLUSHING." See below for a true

and accurate representation of the front and back panels of the package for Cottonelle Fresh Care Flushable Moist Wipes and an enlarged representation of the logo guaranteeing that the product breaks up after flushing.  Emphasis added.







46.     Kimberly-Clark's representation that Cottonelle flushable wipes "break up like toilet paper after flushing" is a representation to consumers, including Plaintiffs and Class members, that Cottonelle flushable wipes break up as quickly as standard toilet paper after flushing, thereby substantially reducing the chances of clogs, blockages, and other adverse plumbing problems in the consumer's household plumbing.  This representation is false and deceptive to consumers.  Cottonelle flushable wipes do not break up "like" or as quickly as toilet paper and does not, "like toilet paper," reduce or alleviate the chance for clogs, blockages, or other adverse plumbing consequences in consumer's home plumbing system.

47.     On the product packaging for the Cottonelle Ultra Comfort Care Flushable Cleansing Cloths the phrase "flushable cleansing cloths" is displayed prominently.  Also appearing prominently on the front of the product's package is a logo stating the wipes are manufactured using "SAFE FLUSH TECHNOLOGY," representing to consumers that these wipes "break up after flushing and are sewer and septic safe."    See below for a true and accurate representation of the front panel of the package for Cottonelle Ultra Comfort Care Flushable Cleansing Cloths and an enlarged representation of the SAFE FLUSH TECHNOLOGY logo.





48.     On the side panels for the product packaging for the Cottonelle Ultra Comfort Care Flushable Cleansing Cloths the SAFE FLUSH TECHNOOLGY logo is prominently displayed along with and a representation, statement and guarantee that "Safe Flush Technology ensures that Cottonelle Ultra Comfort Care Flushable Cleansing Cloths break up after flushing, and are sewer and septic safe."     The side panels advise consumers, "For best results, flush only one or two cloths at a time."  The side panels also contain the following warning:  "WARNING To avoid danger of suffocation, keep this bag away from babies and children. Dispose of plastic divider inside bag properly. Do not use or flush divider."  See below for a true and accurate

representation of the side panels of the package for Cottonelle Ultra Comfort Care Flushable Cleansing Cloths.



49.     The inclusion of a warning not to flush the wipes' packaging materials, creates a reasonable expectation with consumers that Kimberly-Clark represents and warranties that the term "flushable" means that the wipes can be safely disposed of by flushing them down the toilet, like regular toilet paper, and the wipes will not clog the toilet or cause plumbing damage – in contrast to other items, such as the plastic divider inside the bag in which the wipes are packaged, which are not toilet safe and should not be flushed.

50.     In its "Frequently Asked Questions" section of its website, Kimberly-Clark's reference to "Cottonelle Flushable Cleansing Cloths" demonstrates its belief that all of its Cottonelle brand flushable products are the same product – flushable moist wipes – and all

Cottonelle flushable wipes have the same performance characteristics regardless of whether there are slight variations with the individual products (e.g. the addition of Shea Butter) or the packaging or name (e.g. Fresh Care, Ultra Comfort Care, etc.) on the product packaging.

51.     Regardless of whether a package of Cottonelle flushable wipes displays the words "Fresh Care Flushable Cleansing Cloths," Ultra Comfort Care Flushable Cleansing Cloths", or Fresh Care Flushable Moist Wipes, they are all materially the same product – a moist wipe to be used for personal hygiene that purportedly can be disposed of by flushing down the toilet.  The packaging for these wipes all tout the same or similar product characteristics (e.g. "breakup after flushing" and "sewer and septic safe") and contain the same use instructions (i.e. "For best results, flush only one or two cloths at a time.").

52.     Kimberly-Clark represents to consumers that Cottonelle Fresh Care and Cottonelle Ultra Comfort Care both feature "Safe Flush Technology."  See below for a true and accurate representation of an advertisement from Kimberly-Clark representing that Cottonelle Fresh Care and Ultra Comfort Care wipes both features "Safe Flush Technology."



53.     In a document titled FLUSH? OR DON'T FLUSH?  Some Questions & Answers About Pre-Moistened Wipes from Kimberly-Clark, Kimberly-Clark, represents that "Consumers should read the labels on our wipes products to determine whether they are flushable or non-flushable."  Representing to consumers that representations, statements, and guarantees on their product packaging is reliable, accurate, and the ultimate authority as to whether the wipes can be safely be flushed down the consumer's toilet without the risk of damage to the consumer's plumbing or sewer and septic systems.

54.     In its advertising and marketing of their Cottonelle flushable wipes, Kimberly-Clark suggests and encourages consumers to rely on Kimberly-Clark's expertise and knowledge of the product to determine whether their flushable wipes may be safely flushed down the consumer's household toilet.  Below is a true and accurate representation of an advertisement and representation by Kimberly-Clark disseminated to consumers on Amazon.com's website.



From the Manufacturer

**Fresh Care Flushable Moist Wipes**
There's nothing like that "clean in-between" feeling for all-over freshness. Cottonelle brand gives you a shower-fresh feeling that leaves you confidently clean.

**What are Cottonelle Fresh Care Flushable Moist Wipes?**
To feel cleaner and fresher than toilet paper alone, Cottonelle brand offers Cottonelle Fresh Care Flushable Moist Wipes. These wipes are pre-moistened for thorough cleansing and freshening.

Cottonelle Fresh Care Flushable Moist Wipes are flushable and are suitable for the following purposes: using with toilet paper as part of your bathroom routine, when traveling, and cleaning hands and faces.

**Are the Wipes Safe for My Sewer/Septic System?**
Yes. Kimberly-Clark (Cottonelle) and other participating member manufacturers worked with industry groups, the International Nonwovens and Disposables Association (INDA), and the European Disposables and Nonwovens Association (EDANA) to define guidelines to help manufacturers determine if nonwoven consumer products are flushable.

These INDA/EDANA flushability guidelines were published in June 2008. The guidelines have multiple tests that evaluate in-home flushability and all methods of disposal (i.e., sewer and septic systems) to ensure products move through a properly maintained and designed home or system. All Cottonelle Flushable Moist Wipes comply with the guidelines.

55.     Kimberly-Clark is aware of studies, reports, or other information indicating that the word "flushable" is ambiguous and potentially confusing to consumers and that when used in reference to moist wipes creates the impression or assumption in a consumer's mind that the wipes, like toilet paper, are able to be flushed down household plumbing systems without the threat of clogs, blockages, back-ups or other adverse plumbing consequences.

56.     In advertising, marketing, and describing their flushable wipes, Kimberly-Clark's representations like "Flushable," "Break up after flushing," "Sewer – and septic – safe," and "Safe Flush Technology ensures that Cottonelle Ultra Comfort Care Flushable Cleansing Cloths break up after flushing, and are sewer and septic safe" creates a reasonable expectation with reasonable consumers that Defendant represents and warranties that the term "flushable" means that the wipes can be safely disposed of by flushing them down any toilet in any operating plumbing system, including their own, and that like regular toilet paper the wipes will not clog the toilet or cause plumbing damage or adverse plumbing issues.

57.     Kimberly-Clark's representations regarding the flushability of their flushable wipes are false.

58.     Kimberly-Clark does not include adequate warnings in its marketing or on its packaging for Cottonelle flushable wipes informing consumers that flushing these flushable wipes could cause problems with or damage to the consumer's plumbing system, or sewer or septic systems.

59.     Kimberly-Clark does not include adequate warnings to consumers in its marketing or on its packaging for Cottonelle flushable wipes that the type, design or age of a plumbing system, variable environmental conditions, or any other conditions that vary from the "perfect condition of the laboratory test" may adversely affect the "flushability" of the product.

60.     Kimberly-Clark's Cottonelle brand flushable wipes, including Cottonelle Fresh Care Flushable Cleansing Cloths, are defective because they do not conform to factual representations made by Defendant in connection with the various sale transactions on which Plaintiffs and Class members relied in their purchase and use of the product.  The defect existed at the time Defendant's flushable wipes left their control.

**Equate Flushable Wipes**

61.     Rockline designs, manufactures, packages, and markets Equate brand flushable wipes.

62.     Walmart designs, packages, distributes, and sells Equate brand flushable wipes in many of its stores throughout the U.S., including in Florida and this Judicial District.  In fact, appearing of the packaging for its Equate Flushable Wipes is the following statement: "Distributed by: Wal-Mart Stores, Inc., Bentonville, AR 72716."

63.     On the product packaging for the Equate flushable wipes, Rockline and Walmart ("the Equate Defendants") have placed representations, statements, and guarantees that the wipes are flushable and safe for plumbing, septic and sewer systems.

64.     On the product packaging for the Equate Flushable Wipes, the phrase "Flushable Wipes" is displayed prominently.  Also appearing on the package is a logo guaranteeing the wipes, "BEAKS APART AFTER FLUSHING."  See below for a true and accurate representation of the front of the packaging for Equate Fresh Scent Flushable Wipes and an enlarged representation of the BEAKS APART AFTER FLUSHING logo.





65.     On the back of the product packaging for Equate Flushable Wipes, Rockline and Walmart have placed various guarantees and representations that the wipes are "flushable" and safe to be disposed of through a consumer's home plumbing system.  One such guarantee or representation states, "Certified Flushable," and "Suitable for Sewer and Septic."  Another guarantee or statement appearing on the back of the product packaging states, "Safe for properly maintained sewer & septic."  See below for a true and accurate representation of the referred to portion of the back of packaging for Equate Flushable Wipes.



66.     Also on the back of the packaging for the Equate Fresh Scent Flushable Wipes is the following guarantee or representation:

> Better than dry tissue alone.  Contains soothing Aloe & Vitamin E.
> Equate Flushable Wipes break apart after flushing, reducing the
> chance for blockages at home and in waste management systems.
> More than 95% biodegradable and made with 95% renewable
> resources.  Our unique material is gentle on the environment.

Emphasis added.  See below for a true and accurate representation of the referred to portion of the back of packaging for Equate Fresh Scent Flushable Wipes.



67.    On the Equate Flushable Wipes' packaging, the Rockline and Walmart advise the consumer, "For best flushability, use only one or two wipes per flush."

68.    On its website (www.walmart.com) where Walmart markets and sells these products to the public, in a section titled "About this item," Walmart makes the following guarantee or representation:

> Better than dry tissue alone—Equate Fresh Scent Flushable Wipes contains soothing aloe and vitamin E.  <u>Like toilet paper, Equate Flushable Wipes break apart after flushing</u>, reducing the chance for blockages at home and in waste management systems.  More than 95% biodegradable and made with 95% renewable resources, this unique material is gentle on the environment.

Emphasis added.

69.    Rockline's and Walmart's representation that "Like toilet paper, Equate Flushable Wipes break apart after flushing" is a representation to consumers, including Plaintiffs and Class

members, that Equate Flushable Wipes break apart as quickly as standard toilet paper after flushing thereby substantially reducing the chances of clogs, blockages, and other adverse plumbing problems in the consumer's household plumbing.  This representation is false and deceptive to consumers.  Equate Flushable wipes do not break down "like" or as quickly as toilet paper and does not, "like toilet paper," reduce the chance for blockages at home and in waste management systems.

70.     Also on its website where Walmart markets and sells these products to the public, in a section titled "Warnings," Walmart warns of only the following risks: "To avoid suffocation, keep plastic bags away from children [a]nd pets.  This bag not intended for reuse.  Do not flush this bag."

71.     The inclusion of a warning not to flush the bag, creates a reasonable expectation with consumers that Rockline and Walmart represent and warranty that the term "flushable" means that the wipes can be safely disposed of by flushing them down the toilet, like regular toilet paper, and the wipes will not clog the toilet or cause plumbing damage – in contrast to other items, such as the bag in which the wipes are packaged, which are not toilet safe and should not be flushed.

72.     Rockline and Walmart are aware of studies, reports, or other information indicating that the word "flushable" is ambiguous and potentially confusing to consumers and that when used in reference to moist wipes creates the impression or assumption in a consumer's mind that the wipes, like toilet paper, are able to be flushed down household plumbing systems without the threat of clogs, blockages, back-ups or other adverse plumbing consequences.

73.     In advertising, packaging, marketing, and describing their flushable wipes, Rockline's and Walmart's representations like "Flushable," "break apart after flushing,"

"Certified Flushable,"  "Suitable for Sewer and Septic," and "like toilet paper, Equate Flushable Wipes break apart after flushing"  creates a reasonable expectation with reasonable consumers that Defendants  represent and warranty that the term "flushable" means that the wipes can be safely disposed of by flushing them down any toilet in any operating plumbing system, including their own, and that like regular toilet paper the wipes will not clog the toilet or cause plumbing damage or adverse plumbing issues.

74.     Rockline's and Walmart's representations regarding the flushability of their flushable wipes are false.

75.     Nowhere in the marketing of or on the packaging for Equate flushable wipes has Rockline or Walmart provided adequate warning to consumers that flushing these flushable wipes could cause problems with or damage to the purchaser's plumbing system, or sewer or septic systems, or that conditions with the consumer's plumbing system that differ from the "perfect condition of the laboratory test" by which Rockline and Walmart tested their flushable wipes, or what variables may exist that limit the performance of or increase the likelihood of the product to fail to meet the represented characteristics and performance qualities.

76.     Rockline's and Walmart's Equate Flushable wipes are defective because they do not conform to factual representations made by these Defendants in connection with the various sale transactions on which Plaintiffs and Class members relied in the purchase and use of the product.  The defect existed at the time Defendants' Equate Flushable Wipes left their control.

## Consumer Problems and Complaints

77.     Despite Defendants marketing these wipes as "flushable" and safe to flush, consumers from all over the United States have for several years experienced and complained to Defendants of problems with their flushable wipes.   These problems relating to the non-

flushability of Defendants flushable wipe products and that they do not break down after flushing as Defendants represent, were apparent and were and are known to Defendants.

78.     In an April 24, 2013, comment titled "not for rural treatment systems," posted by a consumer identified as "tlkflat" to both the Cottonelle and Walmart websites, the consumer informed of Cottonelle flushable wipes:  "DO NOT use with the newer rural waste water treatment systems like a JET system.  They [the wipes] will clog the booster pump and then tangle in the air pump spinner, VERY costly repair."

79.     In an April 15, 2014, comment titled "never use again," posted by a consumer identified as "sugah" to both the Cottonelle and Walmart websites, the consumer informed of Cottonelle flushable wipes:

> [J]ust had to pay over [$]300.00 today, from using Cottonelle flushable cleansing cloths!!!  [H]ad to have a plumber first and then a septic tank cleaned, just 2 of us living here and have previously only had to have tank cleaned yearly, we were told and shown the cloths that had caused the blockage !! of course we will never use them again.  [T]his [sic] are very false statements on your package.  [T]hey are not sewer and septic safe…just ask anyone who has just experienced what we have today, I will make sure all my friend [sic] know about this…you should be called out on this, we are retired, and this is not in the budget!!!

80.     In a June 1, 2013, comment posted by a consumer identified as "Kenneth" to the Cottonelle website, the consumer informed of Cottonelle flushable wipes:

> I tried a free sample and it did not breakdown like toilet paper.  I purchased this nice package (36 or 42 ?? nothing on the wrapping indicating count).  Being on a septic I checked to ensure it was going to break down.  No matter how hard I mashed and put in a jar with water, heavy agitation it would not break apart. This is not suitable for septic!!!

81.     In a June 24, 2013, comment titled "Cloggs septic systems," posted by a consumer identified as "Richard" to both the Cottonelle and Walmart websites, the consumer informed of Cottonelle flushable wipes:

A few months after flushing the wipes down my toilets and into my septic system it clogged the underground filter. I had the 1000 gallon storage tank pumped and it was disgustingly obvious that the Cottonelle wipes were the culprit.  They do not bread down like toilet paper or even close.  Do not use them if you are on a septic system.  If you read Kimberly Clark's claim for septic systems you will see that it is written to confuse the consumer.  It focuses on "flushability" which only gets these things down the toilet but not through a septic system.

82.     In a March 18, 2013, comment titled "Not Flushable," posted by a consumer identified as "Doug" to both the Cottonelle and Walmart websites, the consumer informed:

Flushable Wipes are NOT flushable.  Sure, they'll flush.  Then they will clog your pipes … always.  It may not be today or tomorrow, but they will clog.  At my bed and breakfast I have to have the plumbers out at least 4 times a year to clean our lines.  It is ALWAYS flushable wipes. BAD PRODUCT.

83.     In a March 22, 2014, comment titled "Use at the risk of FLOODING" posted by a consumer identified as "MLST" to the Walmart website, the consumer informed of Equate flushable wipe**s:**

We used these for personal hygiene, only one at a time as the directions state.  We have had TWO floods in our basement, the second time we completely disassembled the plumbing to find a HUGE wad of equate wipes in the pipes.  Clearly these do NOT dissolve as stated.  Use at your own risk.

84.     In a February 2, 2012, comment titled "Horrible! DO NOT BUY!!," posted by a consumer identified as "ctechwife25" to the Walmart website, the consumer informed of Equate flushable wipe**s:**

Do not buy these wipes!  They caused a massive clog in our plumbing lines and when we put a snake down, these came back just the [way] they were used.  They are only good for wiping you shoes off after you clean out the plumbing pipes. Don't waste you time and money on these.

85.     In a May 8, 2013, comment titled "Absolutely not Flushable!!!," posted by a consumer identified as "Mmmos" to the Walmart website, the consumer informed of Equate flushable wipe**s**:

> I just wrote a check for $110 to the plumber to repair and unclog the sewer system pump.  Even though it says on the package the wipes break apart after flushing, they absolutely DO NOT break apart.  Expensive lesson learned.  Wish I could take that bill to Walmart!

86.     In a November 12, 2012, comment posted by a consumer identified as "dolphin2010" to the Walmart website, the consumer informed of Equate flushable wipe**s**: "[T]hese are supposed to be flushable. [T]hey are not. [I]t plugged up my plumbing."

87.     In a June 20, 2011, comment titled "Bad for Septic System" posted by a consumer identified as "2eff4me" to the Walmart website, the consumer informed of Equate flushable wipes:

> We recently had a routine septic tank pumping done at our home. We do this every two years as we have found that it is best to do this to avoid an emergency winter pumping.  However, this time we found that the Equate flushable wipes were not decomposing but were forming hard balls and in one case a very large mass that plugged the pumper's hose.  We pulled the mass apart and there they were, in just the same for as they were the day they were used. I think you need to go back to the drawing board with these wipes. They are neither flushable nor safe for septic tanks.  I'm just glad we discovered this before they really caused an awful problem.

88.     Despite having notice that their flushable wipes products have and continue to cause problems with and damage to many purchasers' plumbing system, or sewer or septic systems, and despite issuing other product warnings, Defendants have not included in their marketing of these products any warnings to consumers of the defective condition of these products, the products' propensity or potential to cause problems with or damage to the purchaser's plumbing system, or sewer or septic systems, or factors and conditions known to the

Defendants that can limit the ability and likelihood that their flushable wipes will perform as represented – i.e. break apart like toilet paper after flushing and not cause clogs, blockages, or other adverse plumbing conditions .

89.     Like many consumers, Plaintiffs and the Class members have experienced adverse plumbing problems and sustained damage as a result of Defendants' deceptive, untrue, and false representations regarding their flushable wipes products, as well as Defendants' defective design and manufacturing of the products, and Defendants' failure to warn consumers, Plaintiffs, and the Class members of the risk of damage to plumbing, sewer and septic systems caused by use of these flushable wipes.

90.     All Defendants were and are aware and have ample notice that their flushability claims about their flushable wipe products are untrue.

### Other Sources Contradicting Defendant's Claims of "Flushability" and Safety for Sewer and Septic Systems

91.     In addition to consumer complaints, state and local sewer authorities have been imploring manufacturers and seller of these purported flushable wipes to remove the flushability claims from their marketing and product packaging.  The reason the wastewater industry has made these requests is because these products are making it to the wastewater treatment facilities without having broken down as Defendants' represent, thereby causing damage to sewer infrastructure all over the United States and the world.

92.     Indeed, according to the National Association of Clean Water Agencies (NACWA) – a trade association that represents the interests of nearly 300 publicly owned wastewater treatment agencies nationwide – over the past few years cities across the country have incurred hundreds of thousands of dollars in new equipment and maintenance costs to repair damage resulting from flushed wipes, and in some cases even more. The Orange County

Sanitation District spent $2.4 million on new equipment to unclog its pumps. The Washington Suburban Sanitary Commission, which handles sewage for the residents of Montgomery and Prince George's Counties in Maryland, spent more than $1 million to install heavy-duty grinders to shred wipes before they reach pumps on the way to the treatment plant.

93.     Like state and local wastewater authorities, NACWA also advocates against the use of flushable wipes and provides information and assistance to its members to help reduce public consumption and disposal by flushing of these defective and harmful products. See http://www.nacwa.org/index.php?option=com_content&view=article&id=1581&Itemid=3,  (last visited December 22, 2014).

94.     Consumer Reports, an independent consumer publication that publishes reviews and comparisons of consumer products, performed its own independent disintegration test on flushable wipes that simulated toilet flushing conditions. A video clip of the test showed that standard toilet paper broke down in about eight seconds, but flushable wipes did not break down after ten minutes and, even more shocking, still did not break down after being placed in a Kitchen Aid mixer for the same period of time. See http://www.consumerreports.org/cro/video-hub/home--garden/bed--bath/flushable-    wipes/16935265001/22783507001/,    (last    visited December 22, 2014).

95.     All Defendants were aware of the Consumer Reports test and report.

96.     Despite numerous customer complaints, the opinions of the NACWA, Consumer Reports, and others, the Defendants deny that their flushable wipes cause harm to plumbing, sewer or septic systems and continue to represent that their flushable wipes are able to be flushed down any home plumbing system without any adverse consequences or damages.

### FACTUAL ALLEGATIONS RELATED TO THE NAMED PLAINTIFFS

97.     Since December 24, 2010 Plaintiffs, Dennis and Heather Sweeney, made several purchases of Cottonelle brand flushable wipes, including Cottonelle Fresh Care Flushable Cleansing Cloths, and Equate Flushable Wipes from their local Walmart Supercenter store (#1960) located at 1505 North Dale Mabry Highway in Tampa, Florida, the Walmart Supercenter store (#4681) located at 4302 West Gandy Boulevard in Tampa, Florida, and the Sam's Club store (# 6642) located at 5135 S. Dale Mabry Highway in Tampa, Florida.  Below is a partial list of Plaintiffs' known flushable wipes purchases.  In addition to the purchases listed below, Plaintiffs made other purchases during this time period, from the Walmart Supercenters identified above, of Cottonelle brand flushable wipes, including Cottonelle Fresh Care Flushable Cleansing Cloths and Cottonelle Ultra Comfort Care Flushable Cleansing Cloths and Equate Flushable Wipes.  Plaintiffs recall and believe that these purchases were made with cash and therefore would not be included on a purchase history report from Walmart or Plaintiffs credit card transaction history.

| | | | |
|---|---|---|---|
| Walmart Supercenter 4302 W. Gandy Blvd. Tampa, Florida | December 29, 2010 | Cottonelle Fresh Care Refill (84ct) | $  3.64 |
| Walmart Supercenter 4302 W. Gandy Blvd. Tampa, Florida | May 11, 2011 | Cottonelle Wipe Refill | $  7.28 |
| Sam's Club 5135 S. Dale Mabry Tampa, Florida | July, 9, 2011 | Cottonelle Fresh Care wipes | $ 19.54 |
| Sam's Club 5135 S. Dale Mabry Tampa, Florida | September 8, 2011 | Cottonelle Fresh Care wipes | $  9.77 |
| Walmart Supercenter 4302 W. Gandy Blvd. Tampa, Florida | March 1, 2014 | Equate Flushable Wipes 3x | $  3.97 |

98.     The Sweeneys used these wipes primarily for potty training their young children and would dispose of the wipes by flushing them down the toilet(s) in their home, per the directions on the product's packaging.

99.     The Sweeneys purchased and used both Cottonelle brand flushable wipes, including Cottonelle Fresh Care Flushable Cleansing Cloths, and Equate Flushable Wipes at all times relevant to this Complaint.  At any given time, both brands of wipes were present and in use in the Sweeney home.

100.    On or about November 13, 2011, the Sweeneys noticed problems with the plumbing in their home.  Most notably, the Sweeneys noticed difficulty in flushing the toilet in one of their bathrooms.  More alarmingly, when the toilet was flushed, raw sewage would flood out of the drain and into the shower located in the bathroom.

101.    Upon discovery of this potentially health-endangering plumbing problem, the Sweeneys hired Olin Plumbing, Inc. ("Olin") to diagnose and repair the problem.

102.    Upon inspection of the Sweeneys' home plumbing system, Olin determined that the home's main plumbing line was clogged.  In repairing the clogged line, Olin discovered, in the presence of Plaintiff Dennis Sweeney, that the Cottonelle brand flushable wipes, including Cottonelle Fresh Care Flushable Cleansing Cloths, and Equate Flushable Wipes the Sweeneys had disposed of via their toilet had not dispersed upon flushing but remained intact and caked together in the Sweeneys' plumbing system, thereby causing the problems described above.

103.    The Sweeneys paid Olin approximately $370 for the work to diagnose and repair the plumbing problem caused by the failure of Defendants' flushable wipes to perform as warranted, *to wit*:  disperse upon flushing and clear the Sweeneys' home plumbing system.  The Sweeneys also incurred cost to have their shower professionally cleaned and disinfected.

31

104.    The Sweeneys would not have incurred these costs but for Defendants' tortious acts, omissions and statutory violations regarding the design, manufacturing, packaging, marketing, distribution, and sale of their flushable wipes.

105.    The Sweeneys were unaware, did not and could not have discovered or become aware, even in the exercise of reasonable diligence, that Defendants' wipes were defective, that the representations on the wipes' packaging were untrue, and would cause harm to their home plumbing until Olin discovered that the wipes had clogged the Sweeneys' home plumbing system.

106.    In addition to the damages for plumbing repair(s) and cleaning cost(s), the Sweeneys also sustained damages associated with paying more money per wipe for Defendants' wipes labeled as or represented to be flushable than by purchasing comparable wipes that are not labeled as or represented to be flushable.

107.    Plaintiffs and members of the Class paid more for Defendants' flushable wipes than they otherwise would have if they had not been misled by the deceptive, false, and misleading labeling, advertisements, and misrepresentations complained of herein.

108.    Neither the Sweeneys, nor members of the Class, would have purchased Defendants' flushable wipes but for Defendants' false and misleading labeling, advertisements, statements, and/or representations.  Indeed, the only reason the Sweeneys purchased Defendants' flushable wipes is because they were labeled, advertised, and represented to be "flushable" and "safe for sewer and septic," thus promising a safe, more convenient and sanitary means of disposal.

109.    Thus, Defendants' flushable wipes were worth less than what Plaintiffs and members of the Class were wrongfully enticed to and did pay for them.

110.    Plaintiffs and members of the Class lost money as a result of Defendants' wrongful conduct because Plaintiffs and members of the Class did not receive what they paid for.

111.    Plaintiffs and members of the Class were induced to and did purchase Defendants' flushable wipes rather than competing, similar products based on Defendants' deceptive, false, and misleading labeling, advertisements, and misrepresentations. In so doing, Plaintiffs and members of the Class altered their position to their detriment and suffered damages therefrom.

### CLASS ACTION ALLEGATIONS

112.    Plaintiffs bring this action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of themselves and the members of the following proposed Classes:

> **Cottonelle Class:**  All persons residing in the State of Florida who purchased Cottonelle brand flushable wipes between December 24, 2010 and the present.

> **Cottonelle Sub-class:**  All persons residing in the State of Florida who purchased Cottonelle brand flushable wipes between December 24, 2010 and the present and who have suffered damages or paid costs to repair clogs, blockages, or other adverse plumbing consequences to their on-site plumbing or wastewater conveyance and treatment system(s).

> **Equate Class:**  All persons residing in the State of Florida who purchased Equate brand flushable wipes between December 24, 2010 and the present.

> **Equate Sub-class:**  All persons residing in the State of Florida who purchased Equate brand flushable wipes between December 24, 2010 and the present, and who have suffered damages or paid costs to repair clogs, blockages, or other adverse plumbing consequences to their on-site plumbing or wastewater conveyance and treatment system(s).

113.    Subject to additional information obtained through further investigation and discovery, the foregoing Class(es) may be expanded or narrowed by amendment or amended complaint.  The following are specifically excluded from the Class:  Defendants; any entity in

which the Defendants have a controlling interest; any entity which has a controlling interest in the Defendants; Defendants' assigns or successors; Defendants' directors, officers, or other legal representatives, and members of their immediate families; the Court; the Court's spouse, all persons within the third degree of relationship to the Court and its spouse, and the spouses of all such persons.

114.   <u>Numerosity</u>:  Members of the Class are so numerous that joinder is impracticable. While the exact number of Class members is unknown to Plaintiffs and can only be ascertained through appropriate discovery, upon information and belief Plaintiff alleges that the Class is comprised of thousands of members geographically dispersed throughout the state of Florida. However, the Class is readily identifiable from information and records in Defendants' possession, custody, or control, or other discoverable sources.

115.   <u>Commonality</u>:  Common questions of law and fact exist as to all members of the Class.  These questions predominate over questions that may affect only individual Class members because Defendants have acted on grounds generally applicable to the Class.  Such common legal or factual questions include:

   a.   Whether Defendants' flushable wipes are in fact flushable;

   b.   Whether Defendants' flushable wipes break apart after flushing;

   c.    Whether Defendants' flushable wipes are dispersible;

   d.   Whether Defendants' flushable wipes are sewer and septic safe;

   e.   Whether Defendants' flushable wipes are defective;

   f.   Whether Defendants flushable wipes are defectively designed or manufactured;

   g.   Whether Defendants had a duty to design their flushable wipes against reasonably foreseeable hazards;

h.  Whether Defendants designed their flushable wipes against reasonably foreseeable hazards;

i.  Whether Defendants had a duty to warn Plaintiffs and the Class that their flushable wipes were not flushable or sewer and septic safe;

j.  Whether Defendants' breached their duty to warn Plaintiffs and the Class;

k.  Whether Defendants knew or reasonably should have known that their flushable wipes were defective prior to distributing the wipes to Plaintiffs and the Class;

l.  Whether Defendants knew or reasonably should have known that their flushable wipes were defective after distributing the wipes to Plaintiffs and the Class;

m.  Whether Defendants concealed or failed to disclose to Plaintiffs and the Class the fact that their flushable wipes were defective;

n.  Whether Defendants tortuously breached their warranty obligations to Plaintiff and the Class in connection with their flushable wipes;

o.  Whether Defendants breached the implied warranty of merchantability relating to their flushable wipes;

p.  Whether Defendants were unjustly enriched by receiving moneys in exchange for their flushable wipes that, contrary to guarantees, marketing or other representations made to Plaintiffs and the Class, are not flushable, do not break apart after flushing, and/or are not sewer and septic safe;

q.  Whether Defendants should be ordered to disgorge all or part of the ill-gotten profits it received from the sale of its flushable wipes;

r.  Whether Plaintiffs and the Class are entitled to damages, including compensatory, punitive, statutory or other damages;

s.  Whether Defendants should be enjoined from selling and marketing their flushable wipes;

t.  Whether Defendants engaged in unfair methods of competition, or unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of packaging, marketing, or selling their flushable wipes; and

u.  Whether Defendants engaged in unfair methods of competition, or unconscionable acts or practices, and unfair or deceptive acts or practices by concealing, misleading, or failing to inform Plaintiffs and the Class that their flushable wipes are not flushable, do not break apart after flushing, are not sewer and septic safe, or other information relevant to Defendants' flushable wipes that would have allowed Plaintiffs and Class members to

make a better informed decision to purchase and pay a price premium for Defendants' flushable wipes.

116.   <u>Typicality</u>:  Plaintiffs' claims are typical of the Class members as all members of the Class are similarly affected by the Defendants' actionable conduct as complained herein. Plaintiffs' and all members of the Class purchased Defendants' flushable wipes that were defective in that they are not flushable, dispersible, or sewer or septic safe.  Plaintiffs and all Class members were subject to the same misrepresentations made by the Defendants' regarding Defendants' flushable wipes, including misrepresentations made on the products' packaging, on Defendants' website(s), or via other advertising or communication methods.   Moreover, Defendants' conduct giving rise to the claims of Plaintiffs and Class members is the same for all Class members.

117.   Defendants' defenses to Plaintiffs' claims are typical of its defenses to claims of the Class members.

118.   <u>Adequacy</u>:  Plaintiffs will fairly and adequately protect the interests of the Class because Plaintiffs have no interests antagonistic to, or in conflict with, the Class that Plaintiffs seek to represent.  Plaintiffs are willing and able to vigorously prosecute this action on behalf of the Class and have or can acquire adequate financial resources to assure that the interests of the Class will not be harmed.  Moreover, Plaintiffs have retained counsel experienced and competent in the prosecution of complex class action litigation.

119.   Class action treatment is a superior method for the fair and efficient adjudication of this controversy in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense.  The benefits of the Class mechanism, including providing injured persons or entities with a method for obtaining

redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

120.    The amount of monetary damages at issue for each claim are such that the expenses of litigating Plaintiffs' and each Class members' claim individually would be so cost prohibitive that proceeding individually would deny Plaintiffs and Class members a viable remedy. Thus, proceeding by way of class action is the only fair, efficient, economical, and sensible manner in which to vindicate the injuries sustained by Plaintiffs and Class members.

121.    Plaintiffs know of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

122.    Class action treatment is superior to numerous individual actions since Class action treatment would alleviate the risk or possibility of inconsistent or contradictory judgments that would establish incompatible standards of conduct for Defendants.  Moreover, class action treatment would prevent the risk of adjudications on individual actions that could, as a practical matter, be dispositive of the interests of other Class members not parties to the individual adjudications, or substantially impair or impede their ability to protect their interests.

123.    Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class and subclass as a whole.

124.    This forum is an appropriate forum for litigation of the claims of the Class, which is comprised only of persons residing in the state of Florida.

125.    The undersigned counsel for Plaintiffs and the Class request that this Court appoint them to serve as Class counsel; first on an interim basis and then on a permanent basis pursuant to Federal Rules of Civil Procedure 23(g).  Undersigned counsel will fairly and

adequately represent the interests of the Class, have identified or investigated the Class' potential claims, are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in this action, know the applicable law, will commit sufficient resources to represent the class, and are best able to represent the Class.

## COUNT I

**Violations of the Florida Deceptive and Unfair Trade Practices Act,**
**Florida Statutes §§501.201, et seq.**

126.     Plaintiffs reallege and incorporate into Count I each and every allegation set forth above as if fully set forth herein.

127.     Through their advertising, marketing, packaging, and other means Defendants represented to Plaintiffs and Class members that their flushable wipes possessed certain performance characteristics, uses, benefits, were of a particular standard, quality, grade, or style (i.e. that they were safe for home plumbing, safe for sewer and septic, start to break down immediately after flushing, like toilet paper break apart after flushing, and will not cause adverse plumbing issues).

128.     These representations were and are false.

129.     The numerous consumer complaints of Defendants' flushable wipes not performing as advertised and causing clogs, blockages, and other adverse plumbing consequences, as well as information from other sources regarding the long dispersal time for flushable wipes and the resulting plumbing, wastewater, septic, and sewer problems demonstrate that Defendants' flushable wipes repeatedly and systematically fail to perform as represented by the Defendants.

130.    Defendants have not adequately disclosed or warned Plaintiffs or Class members of the accounts detailing the Defendants' flushable wipes numerous and repeated failure to perform as represented.

131.    Despite the Defendants' knowledge of the existence of multiple factors limiting the ability and likelihood that their flushable wipes will perform as represented, Defendants made representations to Plaintiffs and Class members through their advertising, marketing, packaging, and other means that Defendants' flushable wipes were "flushable," "sewer and septic safe," "break up after flushing," "like toilet paper, break apart after flushing," and will not cause adverse plumbing issues.  These factors and limitations include:

    a.  Defendants are aware of several factors present in the every-day, real-world use of flushable wipes that inhibit or prevent the dispersability of flushable wipes and negatively affect the ability of their flushable wipes to be flushed without causing clogs, blockages, and adverse plumbing issues.  These factors include age, design, and type of the consumer's plumbing system, environmental conditions such as water table height, the presence of solids in the system, and water flow rates.

    b.  Defendants are aware of various plumbing system designs, environmental conditions, and other factors that can contribute to their flushable wipes causing clogs, blockages, and other adverse plumbing issues for consumers, including Plaintiffs and class members.

    c.  Defendants are aware that "legitimate concerns" exist as to whether the test they used to assess the flushability of their wipes down household toilets and plumbing systems is a reliable indicator of flushability in real-world setting.

132.    Defendants did not include adequate disclosures in their advertising, marketing, packaging, or by other means to warn Plaintiffs and Class members of the factors and limitations known to the Defendants or that using their flushable wipes under those conditions could cause Plaintiffs and Class members to suffer damage in the form of clogs, blockages, or other adverse plumbing issues.

133.    Plaintiffs and Class members relied on Defendants' deceptive representations and omission and were induced into purchasing and paying a price premium for Defendants' flushable wipes.

134.    Defendants' representations and omissions were and are likely to mislead Plaintiffs, Class members, and other consumers as to the true characteristics and risks of flushing Defendants' flushable wipes and as to the reasonable belief that Defendants' flushable wipes would perform as represented with every flush, under all circumstances, and under all conditions.

135.    Because of Defendants' representations and omissions, they were able to, have, and do charge a price premium for their flushable wipes as compared to similar moist wipes that are not represented and marketed to be "flushable."

136.    Due to the Defendants' possessing superior knowledge regarding the potential performance characteristics of their flushable wipes and holding themselves out as reliable authorities on the subject, Plaintiffs and Class members acted reasonably under the circumstances in relying on Defendants' representations and omissions.

137.    If Defendants continue to make these same false representations and omissions of material facts it is likely that Class members and other reasonable consumers will be misled.

138.    The "flushability" of Defendants' flushable wipes and Defendants' representations regarding "flushability" are material because they go to one of the central

characteristics, performance, and efficacy of the products at issue.  Similar, less expensive products that are not marketed as "flushable" are available and are suitable to accomplish the consumer's personal hygiene needs.  However, Defendants' false representations regarding the ability of their flushable wipes to be safely disposed of by flushing down the toilet without causing adverse plumbing consequences is likely to affect consumer conduct and induce consumers seeking a quick, sanitary, and safe disposal method for their personal hygiene wipes to purchase Defendants' flushable wipes.

139.   The omitted information regarding numerous past failures of the product to perform as represented and of the factors and limitations that may cause Defendants flushable wipes to fail to perform as represented is material because the information represented or omitted:

a.   pertains to one of the central characteristics of the products – i.e. flushability;

b.   pertains to the ability of the product to meet its stated performance characteristic – i.e. flushability;

c.   pertains to the performance of the product; and

d.   would have enabled Plaintiffs and Class members to better evaluate the products and would have likely affected their choice to purchase, use, and flush these products.

140.   For the aforementioned reasons, beginning at an exact date unknown to Plaintiffs, but at least since December 24, 2010 and continuing to the present Defendants' have violated Florida's Deceptive and Unfair Trade Practices Act by committing unconscionable, deceptive, or unfair acts or practices in the trade or commerce relating to consumer transactions involving the advertising, packaging, marketing, and selling of Defendant Kimberly-Clark's Cottonelle brand

flushable wipes, including Cottonelle Fresh Care Flushable Cleansing Cloths and Cottonelle Ultra Comfort Care Flushable Cleansing Cloths and Defendants Rockline's and Walmart's Equate Flushable Wipes.

141.    Absent and but for the Defendants' unconscionable, false, and deceptive representations, omissions, and practices, Plaintiffs and Class members would not have purchased Defendants' flushable wipes, or paid a higher price for Defendants flushable wipes rather than purchasing lower cost wipes not marketed, labeled, and represented to be flushable.

142.    Due to Defendants' unconscionable, false, and deceptive representations, omissions, and practices, Plaintiffs and Class members have been injured and have suffered damages and loss of money as a result of paying a price premium for Defendants' flushable wipes but receiving products that were not fit or in the condition or possess the qualities as the products they should have received from and as were represented by from Defendants.

## Count II

## Breach of Express Warranty

143.    Plaintiffs reallege and incorporate into Count II the allegations set forth in paragraphs 1 through 125 above as if fully set forth herein.

144.    Under Florida law, a product is defective if it does not conform to representations of fact made by defendant, orally or in writing, in connection with the sale transaction on which Plaintiff relied in the purchase and use of the product.  The representation must be one of fact, rather than opinion.

145.    Beginning at an exact date unknown to Plaintiffs, but at least since December 24, 2010 and continuing to the present, Defendants made representations to the public, including Plaintiffs and Class members, by their advertising, packaging, and other means, that Defendant

Kimberly-Clark's Cottonelle brand flushable wipes, including Cottonelle Fresh Care Flushable Cleansing Cloths and Cottonelle Ultra Comfort Care Flushable Cleansing Cloths and Defendants Rockline's and Walmart's Equate Flushable Wipes were safe to flush down the toilet.  For, example, Defendants made representations to the public, including Plaintiffs, by their advertising, packaging, and other means, that flushable wipes are "sewer and septic safe" and "break up after flushing," and will not cause clogs, blockages, or other adverse plumbing consequences to the consumer's household plumbing system.  These promises became part of the basis of the bargain between the parties and thus constituted an express warranty.

146.   Defendants' representations made to the public, including Plaintiffs and Class members, by Defendants' advertising, packaging, and other means, regarding whether their flushable wipes were flushable and safe for plumbing, sewer, and septic systems were representations of fact regarding the characteristics and performance of Defendants' products and their intended uses.

147.   Defendants made these representations in connection with sales transactions wherein Plaintiffs and Class members purchased Defendants' flushable wipes from retailers selling Defendants' flushable wipes products.

148.   In their purchase and use of Defendants' flushable wipes, Plaintiffs and Class members relied upon Defendants' false representations of fact that their flushable wipes are "flushable," "sewer and septic safe," "break up after flushing," and will not harm their plumbing.

149.   However, Defendants' flushable wipes are defective  and Defendants have breached their express warranty in that Defendants' flushable wipes did not, in fact, flush without adverse consequences to Plaintiffs' and Class members' home plumbing and sewer or

septic systems as set forth in detail herein.  As a result of this breach, Plaintiffs and Class members did not receive goods as warranted by Defendants.

150.    The defect in Defendants' flushable wipes existed at the time the products left Defendants' hands.

151.    As a proximate result of this breach of warranty by Defendants, Plaintiffs and Class members have been damaged in an amount to be determined at trial.

## COUNT III

### Breach of Implied Warranty of Merchantability

152.    Plaintiffs reallege and incorporate into Count III the allegations set forth in paragraphs 1 through 125 above as if fully set forth herein.

153.    Under Florida law, a product is defective if it is not reasonably fit for either the uses intended or the uses reasonably foreseeable by Defendant.

154.    Defendants' implied warranty that their flushable wipes were merchantable was part of the basis of the bargain between Defendants and Plaintiffs and Class members.

155.    Beginning at an exact date unknown to Plaintiffs, but at least since December 24, 2010 and continuing to the present, Defendants breached the implied warranty of merchantability because Defendant Kimberly-Clark's Cottonelle brand flushable wipes, including Cottonelle Fresh Care Flushable Cleansing Cloths and Cottonelle Ultra Comfort Care Flushable Cleansing Cloths and Defendants Rockline's and Walmart's Equate Flushable Wipes were not fit for the ordinary purpose in which they were sold, used, or intended because Defendants' flushable wipes do not conform to the promises, representations of fact, or warranties made by Defendants to Plaintiffs and Class members in the marketing of and on the product packaging of their flushable wipes. Specifically, Defendants' flushable wipes are unfit for the ordinary purpose in

which they were sold, used, or intended because the wipes do not break apart after flushing, are not dispersible, and not sewer and septic safe – the wipes are not "flushable."

156.    By marketing their flushable wipes as, *inter alia*, flushable, that like toilet paper they break up after flushing, are sewer and septic safe, Defendants knew or could reasonably foresee that Plaintiffs and Class members would use and flush these wipes down their toilets.

157.    As a proximate result of this breach of implied warranty of merchantability by Defendants, Plaintiffs and Class members have been damaged in an amount to be determined at trial.

## COUNT IV

### Negligence

158.    Plaintiffs reallege and incorporate into Count IV the allegations set forth in paragraphs 1 through 125 above as if fully set forth herein.

159.    As the designer, manufacturer, packager, marketer, distributor, or seller, Defendants owed a duty to Plaintiffs and Class members to design and manufacture Defendants' flushable wipes in a non-defective condition, to safeguard against reasonably foreseeable hazards of the product, and not to cause injury to Plaintiffs and Class members.

160.    Defendants breached that duty by, *inter alia*: failing to design or manufacture their flushable wipes to  be free from defects; by failing to design and manufacture their flushable wipes so that they would not cause injury to plaintiff; by failing to design or manufacture their flushable wipes against foreseeable hazards of the product; or by failing to exercise reasonable care to design or manufacture their flushable wipes in a manner that the wipes are reasonably safe for their intended use or other uses reasonably foreseeable.

161.    Defendants' flushable wipes are defective because they do not perform in the manner in which they were designed, manufactured, or marketed to consumers.   Namely, Defendants' flushable wipes do not and did not flush without clogging and causing other adverse consequences to Plaintiffs' and Class members' plumbing and sewer or septic systems. Moreover, Defendants' failed to design or market their flushable wipes to protect Plaintiffs and Class members against the factors and limiting conditions that were know by Defendants as having the potential to cause their flushable wipes to fail to meet the representations of the products characteristics and performance.

162.    Defendants' breach of this duty, which began at an exact date unknown to Plaintiffs, but at least since December 24, 2010 and continuing to the present, was the proximate cause of the Plaintiffs' injuries.

163.    The harm to Plaintiffs and Class members was foreseeable since the damage was exactly of the type that Defendants marketed and warrantied their flushable wipes would not cause.

164.    As a direct and proximate result of Defendants' breach of this duty relating to Defendant Kimberly-Clark's Cottonelle brand flushable wipes, including Cottonelle Fresh Care Flushable Cleansing Cloths and Cottonelle Ultra Comfort Care Flushable Cleansing Cloths and Defendants Rockline's and Walmart's Equate Flushable Wipes, Plaintiffs and Class members have sustained damages and ascertainable losses

## COUNT V

### Negligent Misrepresentation

165.    Plaintiffs reallege and incorporate into Count V the allegations set forth in paragraphs 1 through 125 above as if fully set forth herein.

166.     Beginning at an exact date unknown to Plaintiffs, but at least since December 24, 2010, and as set forth herein, all Defendants made misrepresentations of fact to the public, including Plaintiffs and Class members, by their advertising, marketing, packaging, and other means, that Defendants' flushable wipes were safe to flush down the toilet without causing damage to the consumer's plumbing, sewer, and septic systems.

167.     Defendants omitted material facts or misrepresented material facts regarding the effects flushing flushable wipes down toilets have on plumbing and sewer systems.

168.     Defendants owed a duty to Plaintiffs and Class members to exercise reasonable care when issuing statements or disclosures regarding the nature of flushable wipes, including their safety to be flushed down the consumer's toilet.

169.     Defendants breached this duty by making misrepresentations to Plaintiffs and Class members regarding the ability of Defendants' flushable wipes to be flushed without causing adverse effects on plumbing and sewer systems.

170.     Defendants knew of the misrepresentations, made the misrepresentation without knowledge of their truth or falsity, or should have known the representations were false because of the existence of several information sources that were known or should have been known to Defendants, including, testing done by Defendants and third parties, and customer complaints detailing the failure of Defendants' flushable wipes to perform as represented by Defendants.

171.     Defendants' misrepresentations, statements and disclosures, or omission of the same, regarding the ability of flushable wipes to be flushed without causing adverse effects on plumbing and sewer system were likely to deceive or confuse Plaintiffs and Class members.

172.    Defendants' misrepresentations were intended to induce consumers, including Plaintiffs and Class members to act on these misrepresentations and to purchase and use Defendants' flushable wipes.

173.    Because of Defendants' misrepresentations Plaintiffs were induced to purchase, use, and flush Defendants' flushable wipes beginning at least by December 24, 2010 and continued through approximately November 13, 2011, when Plaintiffs experienced the aforementioned plumbing problems at their home and ceased to flush these wipes.

174.    Plaintiffs and Class members, by purchasing flushable wipes and flushing them down their toilets, justifiably acted in reliance upon the representations made by Defendants. Since Defendants are in a superior position and possess greater technical knowledge of the product, Plaintiffs and Class members were justified in their reliance upon Defendants' misrepresentations.

175.    Defendants' misrepresentations are likely to influence future decisions of consumers and the buying public.

176.    As a direct and proximate result of Plaintiffs' and Class members' reliance upon the false representations made by Defendants, as described above, Plaintiffs and Class members purchased and used Defendant Kimberly-Clark's Cottonelle brand flushable wipes, including Cottonelle Fresh Care Flushable Cleansing Cloths and Cottonelle Ultra Comfort Care Flushable Cleansing Cloths and Defendants Rockline's and Walmart's Equate Flushable Wipes, and as a direct and proximate result have sustained damages and ascertainable losses.

## COUNT VI

### Negligent Failure to Warn

177.    Plaintiffs reallege and incorporate into Count VI the allegations set forth in paragraphs 1 through 125 above as if fully set forth herein.

178.    Under Florida law, negligence is the failure to use reasonable care, which is the care that a reasonably careful designer, manufacturer, distributor, or seller would use under like circumstances.  Reasonable care on the part of defendant requires that defendant give appropriate warning(s) about particular risks of the product which defendant knew or should have known are involved in the reasonably foreseeable use(s) of the product.

179.    As the designer, manufacturer, distributor, or seller of their flushable wipes, Defendants had a duty to warn Plaintiffs and Class members about reasonably foreseeable hazards and particular risks associated with the reasonably foreseeable use(s) of the product, including the flushing of the flushable wipes after use.  These foreseeable hazards and particular risks include clogged plumbing and clogging or damage to sewer and septic systems caused by flushing Defendants' flushable wipes.

180.    Defendants knew or should have known of the risk of clogged plumbing and clogging or damage to sewer and septic systems caused by flushing their flushable wipes by way of several information source known to or should have been known to Defendants, including, testing done by Defendants and/or third parties, and customer complaints detailing the failure of Defendants' flushable wipes to perform as promised.

181.    Defendants did not warn Plaintiffs and Class members of these foreseeable hazards and particular risks and thereby breached their duty to warn Plaintiffs and Class

members about the foreseeable hazards and particular risks associated with the intended use of these products.

182.    The warnings (if any) on the packaging of Defendants' flushable wipes are and were not adequate to alert a reasonable ordinary consumer to the potential damage to plumbing, septic and sewer systems caused by reasonable and ordinary use to the product.

183.    Beginning at an exact date unknown to Plaintiffs, but at least since December 24, 2010 and continuing to the present, Defendants' have not adequately warned Plaintiffs, Class members, or other consumers of the potential harmful consequences to plumbing, sewer, or septic systems caused by flushing Defendants' flushable wipes down the toilet.

184.    As a direct and proximate result of Defendants' breach of their failure to warn, Plaintiffs and Class members have sustained injuries and suffered damages relating to Defendant Kimberly-Clark's Cottonelle brand flushable wipes, including Cottonelle Fresh Care Flushable Cleansing Cloths and Cottonelle Ultra Comfort Care Flushable Cleansing Cloths and Defendants Rockline's and Walmart's Equate Flushable Wipes, in an amount to be determined at trial.

## COUNT VII

### Strict Liability Failure to Warn

185.    Plaintiffs reallege and incorporate into Count VII the allegations set forth in paragraphs 1 through 125 above as if fully set forth herein.

186.    Under Florida law, a product is defective when the foreseeable risks of harm from the product could have been reduced or avoided by providing reasonable instructions or warnings, and the failure to provide those instructions or warnings makes the product unreasonably dangerous.

187.    The warnings (if any) on the packaging of Defendants' flushable wipes are not adequate to alert a reasonable ordinary consumer to the potential damage to plumbing, septic and sewer systems caused by use to the product.

188.    Defendants' have not and do not adequately warn Plaintiffs, Class members, or other consumers the potential harmful consequences to plumbing, sewer, or septic systems caused by flushing Defendants' flushable wipes down the toilet.

189.    Had Defendants included adequate warnings regarding the risk of harm from clogged plumbing and clogging or damage to sewer and septic systems caused by flushing Defendants' flushable wipes in their advertising, marketing, or packaging of their flushable wipes, Plaintiffs and Class members could have avoided the harms and damages suffered by either not purchasing Defendants' flushable wipes or not flushing the wipes down their toilets.

190.    The absence of adequate warnings from Defendants regarding the foreseeable risk of harm from the reasonably foreseeable use of the product makes Defendants' flushable wipe products unreasonably dangerous.

191.    As a direct and proximate result of  Defendants' failure to warn of the foreseeable risks of harm associated with the reasonably foreseeable use of Defendant Kimberly-Clark's Cottonelle brand flushable wipes, including Cottonelle Fresh Care Flushable Cleansing Cloths and Cottonelle Ultra Comfort Care Flushable Cleansing Cloths and Defendants Rockline's and Walmart's Equate Flushable Wipes, Plaintiffs and Class members have sustained injuries and suffered damages in an amount to be determined at trial.

## COUNT VIII

### Unjust Enrichment

192.    Plaintiffs reallege and incorporate into Count VIII the allegations set forth in paragraphs 1 through 125 above as if fully set forth herein.

193.    Plaintiffs and Class members conferred a benefit upon Defendants by paying money to purchase Defendants' flushable wipes, thereby conferring upon Defendants an economic benefit by which Defendants profited.  Defendants retained the benefits conferred upon them by Plaintiffs and Class members.

194.    As a result of Defendants' false, fraudulent, and misleading labeling, advertising, marketing, and sale of its defective flushable wipes, Defendants were enriched at the expense of Plaintiffs and Class members.

195.    Defendants knew about the benefit(s) that Plaintiffs and Class members conferred upon them.

196.    It would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits they received from Plaintiffs and Class members, in light of the fact the flushable wipes were not flushable as Defendants purported them to be.  Thus, it would be unjust and inequitable for Defendants to retain the benefits without restitution to Plaintiffs and Class members of all monies paid to Defendants for the products at issue.

197.    As a direct and proximate result of Defendants' actions regarding Kimberly-Clark's Cottonelle brand flushable wipes, including Cottonelle Fresh Care Flushable Cleansing Cloths and Cottonelle Ultra Comfort Care Flushable Cleansing Cloths and Rockline's and Walmart's Equate Flushable Wipes, Plaintiff and the Class have suffered damages in an amount to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs demand judgment against Defendants for themselves and the Class members as follows:

A.      An Order determining that this action is a proper class action and certifying Plaintiffs as representative of the Class;

B.      An Order declaring Defendants' practices to be unconscionable, deceptive, and/or unfair acts or practices, and requiring Defendants to pay actual damages to Plaintiffs and Class members;

C.      An Order awarding statutory, compensatory and punitive damages in favor of Plaintiffs and the other Class members against Defendants for Defendants' tortious conduct, breach of contract and/or breach of warranties, and violation of the Florida Deceptive and Unfair Trade Practices Act, and for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

D.      A temporary, preliminary, or permanent injunction: (i) ordering Defendants to make disclosures, through corrective advertising, to inform the public of the true nature regarding the effect on plumbing when flushable wipes are flushed; (ii) enjoining Defendants from selling flushable wipes until the above requested proper disclosures are issued and disseminated; and (iii) ordering Defendants to waive or reimburse any fees to be incurred by consumers in connection with plumbing services needed to repair plumbing systems;

E.      Disgorgement and restitution;

F.      An Order awarding Plaintiffs and the Class members their reasonable costs and expenses incurred in this action, including attorney's fees and expert fees; and

G.       Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.


DATED:         October 9, 2015


Respectfully submitted,

**/s/  Christopher D. Boutwell**

**BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.**
Christopher D. Boutwell – *Pro Hac Vice*
Alabama Bar # 1941-O78B
Chris.Boutwell@beasleyallen.com
Rhon E. Jones – *Pro Hac Vice*
Alabama Bar # 7747-E52R
Rhon.Jones@beasleyallen.com
Post Office Box 4160
Montgomery, Alabama  36103-4160
(334) 269-2343  (Telephone)
(334) 954-7555  (Facsimile)

**AG LAW, INC.**
 ANTHONY J. GARCIA
 Fla Bar ID # 106909
 *anthony@aglawinc.com*
742 South Village Circle
Tampa, Florida 33606
(813) 259-9555 (Telephone)

**Counsel for Plaintiffs and the Proposed Class**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on October 9, 2015 a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF, which will send notification to the registered attorney(s) of record as listed below that the documents have been filed and are available for  viewing and downloading.

/s/ Christopher D. Boutwell
Admitted *Pro Hac Vice*

**Counsel for Kimberly-Clark Corp.**

Sidley Austin, LLP
Mr. James Mizgala
Mr. Daniel Spira
Ms. Kara McCall
One South Dearborn
Chicago, Illinois 60603

Carlton, Fields, Jorden, Burt P.A.
Mr. Chris S. Coutroulis
Mr. E. Kelly Bittick, Jr.
Post Office Box 3239
Tampa, Florida 33601

**Counsel for Rockline Industries, Inc.**

Rumberger, Kirk & Caldwell
Mr. J. Richard Caldwell, Jr.
Mr. Douglass B. Brown
Ms. Jessica A. Tetrick
Post Office Box 3390
Tampa, Florida 33601-3390

**Counsel for Walmart Stores, Inc.**

Greenberg Taurig, LLP
Mr. David E. Sellinger
Mr. Gregory W. Kehoe
200 Park Avenue
Florham Park, New Jersey 07932-0677