## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DENNIS PATRICK SWEENEY, JR. and
HEATHER RENEE COPHER-SWEENEY,
On Behalf of Themselves And All Others
Similarly Situated,

                Plaintiffs,

v.

KIMBERLY-CLARK CORPORATION,
WAL-MART STORES, INC., and
ROCKLINE INDUSTRIES, INC.,

                Defendants.

Case No. 8:14-cv-3201-T-17-EAJ

---

## DEFENDANT ROCKLINE INDUSTRIES, INC.'S
## MOTION TO DISMISS, OR IN THE ALTERNATIVE
## MOTION FOR SUMMARY JUDGMENT AND MOTION
## TO STRIKE CLASS ALLEGATIONS

Defendant Rockline Industries, Inc. ("Rockline") pursuant to Federal Rules of Civil Procedure 12, 23, and 56, move to dismiss Plaintiffs' First Amended Class Action Complaint ("FAC" or the "Amended Complaint" [ECF No. 71]), or, alternatively, for summary judgment, and to strike Plaintiffs' class allegations.

## I.      INTRODUCTION

The crux of the case is unmistakably clear. Plaintiffs claim they have suffered an injury to their plumbing system by the use of flushable wipes sold by Wal-Mart and manufactured by either or both Kimberly-Clark and/or Rockline. However, this class action has little to do with the plumbing clog. Plaintiffs cannot realistically assert that the issues of causation as to an actual or claimed clog that can be determined by any methodology, except a physical investigation. (D. Sweeney Trans. p. 25, (15); p. 26, (6-20)).

Plaintiffs' class action is really restricted to the "price premium" theory – which is dependent on a claimed injury for wipes that are flushed and cause no plumbing injury. Ironically, Plaintiffs advance this theory most prominently on the FDUTPA claim despite the long line of cases that FDUTPA only provides a damage remedy for actual damages caused by reason of violation of the substantive provisions of the statute. 501.212(2), Fla. Stat. Each of the other claims require proof of injury-in-fact, which Plaintiffs cannot prove if the products flushed in a manner that caused no clog. In any event, the Plaintiffs' experience with flushable wipes establish beyond doubt why these Plaintiffs cannot prove their case or the case of all class members.

A proper class action involves situations where the representative Plaintiffs, by proving their own case, necessarily prove the case, or at least the critical issues in the case, as to all putative class members. The evidence in this case includes disputes about whether there was a plumbing clog caused by wipes, and if so, which house did it occur at, and which wipes, if any, contributed to the alleged plumbing clog. The only way to determine the cause of a clog is a physical examination of the pipes and an examination of the material causing the clog.

The problem of causation and ascertainability are also well documented in this case. They include Plaintiffs' assertion that additional wipes may have been purchased at unknown times, in unknown quantities, including at least two separate brands of products, all with no proof of purchase or any specificity regarding the material facts regarding those purchases. (D. Sweeney Response to Request for Admissions Nos. 29, 35, 36, 43, 51, 52).

The evidence on the so called "price premium" theory, also establishes the complexity of consumers' purchase decisions and the misapplication of a price premium theory in this case. Plaintiffs continued to purchase, use, and dispose of flushable wipes after November 13, 2011

for three years prior to filing this complaint without flushing a single wipe. To this day, they apparently continue this practice based on the size, appearance, convenience, and other entirely subjective criteria unique to each purchaser that only have one fact in common –they have nothing to do with flushability.

The FDUTPA claim has not properly alleged that the representation on the package or any representations were likely misled a consumer acting reasonably to their detriment. Further, Plaintiffs' price premium theory for wipes that did not cause a plumbing clog is not viable under any legal theory because the customer got the benefit of the bargain. Plaintiffs have failed to identify any purchase of any Equate wipes that could plausibly be tied to the plumbing clog, especially, since Mr. Sweeney assumed that the wipes used most recently caused the clog. (CITE)

Additionally, this Court should strike Plaintiffs' class allegations because the Amended Complaint and Plaintiffs' admissions demonstrate that Plaintiffs' claims are not typical of those of the putative classes they seek to represent, and property damage classes – inherently individual issues regarding causation, injury, and damages – are not appropriate for class certification. Therefore, it is clear even at the pleadings stage that Plaintiffs cannot satisfy the requirements of Rule 23.

**BACKGROUND**

## II.   PLAINTIFFS' ALLEGATIONS AND CLAIMS

Rockline adopts the statement of Plaintiffs' claims and allegations from the Motion of Wal-Mart and Kimberly-Clark.

### III.    UNDISPUTED FACTS

Critically, Mr. Sweeney testified that he could *not* say that flushable wipes "frequently" caused clogs. (D. Sweeney Trans. p. 105, (7-11). His reluctance to make such a statement was understandable. He and his wife used flushable wipes at their first home on San Miquel Street from March 2004 until March 29, 2009 – 5 years. (D. Sweeney Trans. pp. 16, (23-25); 17, (1-4); (D. Sweeney Response to Request for Admission No. 18).

The Sweeneys first and only plumbing clog that they claim was caused by flushable wipes was on November 13, 2011. The evidence shows that both the Sweeneys, and part of the time, their two children used flushable wipes from March 2004 through November 13, 2011 without any incidents – over seven years – that they attributed to flushable wipes. Mrs. Sweeney testified that her expectation was that flushable wipes would not cause clogs, including the drain, but she did not think it would be better than toilet paper as far as reducing risk because "toilet paper doesn't say use one or two squares." (H. Sweeney Trans. pp. 97, (14-25); 98, (1-25); 99, (1-3)). Also *see* (H. Sweeney's Response to Interrogatory No. 10)  Her expectation was that MTTS would actually be flushable and not cause a blockage of her plumbing. Mr. Sweeney also testified that he thought the product should disperse like toilet paper because he did not want to have a clog. (D. Sweeney Trans. pp. 101, (20-25); 102, (1-18)). He claimed that he thought flushable wipes should be at least as good as toilet paper. (D. Sweeney Trans. p. 124, ll. 5-9). Mrs. Sweeney testified that she had clogs caused by toilet paper "less than once a year." (H. Sweeney Trans. pp. 96, ( 21-25); 97, (1-2)).

The Sweeneys never made an effort to notify either Wal-Mart or Rockline regarding their plumbing problem or any complaint. (H. Sweeney Trans. p. 32, (8-12); H. Sweeney Response to Interrogatory No. 6; D. Sweeney Response to Request for Admission No. 19.)

4

Plaintiffs also confirmed that, despite believing that Defendants' flushable wipes are not "flushable," they have continued to purchase Defendants' flushable wipes and to throw them in the trash after use. *See* (D. Sweeney Trans. pp. 20 (7-24); 46 (14-47)); (H. Sweeney Trans. pp. 73 (19); 74 (8) 235 (4-9)).  Plaintiffs continue to buy and use these products despite knowing that Defendants' flushable wipes are more expensive than wipes not marketed as flushable. *See* (D. Sweeney Trans. pp. 47 (11); 49 (2)); (H. Sweeney Trans. pp. 75 (17-25); 198 (20); 199 (1)). They do so because Mrs. Sweeney finds Defendants' flushable wipes to be "smaller and more [a]esthetically pleasing and [they] come in a smaller container which is more appropriate for the bathroom environment.  Also the flushable wipes don't have cartoon characters on them and other things.  They fit a lot easier in the cabinet or on the shelf behind the toilet." (H. Sweeney Trans pp. 76 (6–12); 287 (7–12)); (D. Sweeney Trans. pp. 48 (25); 50 (4)).  As recently as July 1, 2015, Plaintiffs continued to purchase and use the same brands of flushable wipes as before the November 2011 plumbing incident. (H. Sweeney Trans. p 285 (1–11)); (D. Sweeney Trans. pp. 19 (17)–21(1)).

## IV.  PROCEDURAL HISTORY

Rockline adopts the statement of Plaintiffs' claims and allegations from the Motion of defendants, Wal-Mart and Kimberly-Clark.

## V.  STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss should be granted if a plaintiff is unable to articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quoting Fed. R. Civ. P. 8(a)).

"[C]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Airlines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

Summary judgment should be granted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). While the Court draws "all reasonable inferences in the light most favorable to the nonmoving party[,] . . . [s]ummary judgment must be granted if the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1294 (11th Cir. 2005) (internal citation omitted). "Conclusory allegations, evidence that is not significantly probative, and personal opinions will not suffice to defeat a motion for summary judgment." *Guinn v. AstraZeneca Pharms. LP*, 598 F. Supp. 2d 1239, 1242 (M.D. Fla. 2009), *aff'd*, 602 F.3d 1245 (*citing Johnson v. Fleet Fin., Inc.*, 4 F.3d 946, 949 (11th Cir. 1993)).

Rule 56(a), Fed. R. Civ. Proc. Allows a party to move for judgment "on any claim or defense or <u>part</u> of any claim or defense. (emphasis added). Rule 56 was amended in 2010 to clarify that summary judgment can be asserted only as part of a claim. This is consistent with the mandate of Rule 1. By alleging damages for the March 1, 2014 damages, Plaintiffs have clearly put that question at issue in a manner that the court can address it as part of Defendants' summary judgment motion.

## VI.   COUNT I – FDUTPA SHOULD BE DISMISSED WITH PREJUDICE OR ROCKLINE SHOULD BE GRANTED SUMMARY JUDGMENT

### A.   Plaintiffs Have Failed to Allege that Defendants' Representations are Likely to Mislead Consumers Acting Reasonably to Their Detriment

Plaintiffs must allege and prove the challenged statements "are likely to mislead consumers acting reasonably in the circumstances to the consumers' detriment." *PNR, Inc. v. Beacon Prop. Mgmt.,* 842 So.2d 773, 777 (Fla. 2013) (citing *Millennium Communications & Fulfillment, Inc. v. Office of the Attorney Gen.,* 761 So.2d 1256, 1263 (Fla. 3d DCA 2000)). This standard requires a showing of a "probable, not possible deception," that is likely to mislead the consumer. *Millennium,* 761 So.2d at 1263 (citing *Southwest Sunsites, Inc. v. Federal Trade Commission,* 785 F.2d 1431 (9th Cir.1986)).   The *Millennium* Court cited *Southwest Sunsites, Inc.*[1] for the proposition that the new standard is based upon the 1983 FTC Policy on Deception. *Id.* The court noted the representations must be "material. . . likely to cause injury to a reasonably relying consumer . . . whereas the old standard reached deceptions that a consumer might have considered important, whether or not there was reliance." *Id.* at 1263.

Plaintiffs plead a theory that a product's failure to perform makes any pre-sale statement regarding performance or description of that product a *per se* violation of FDUTPA.   This position would turn every allegation of product failure, and thus every contract claim, into a FDUTPA claim.   As explained by the court in *PNR,* "[t]his opinion does not operate to convert each and every breach of contract . . . case into a claim under [FDUPTA]." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So. 2d 773, n.2 (Fla. 2003).   The *PNR* court goes on to state that such an interpretation "would be precluded by FDUTPA," which only reaches conduct that is unfair or

---

[1] The *Southwest Sunsite* case also noted that the 1983 Deception Policy Statement was binding on the Commission. *Southwest Sunsites,* 785 F.2d at n. 2.   That Policy Statement is incorporated into Florida law by 501.203(3)(b).

deceptive as "judged by controlling case law." *Id.*; *see Horton v. Woodman Labs, Inc.*, 8:13-CV-3176-T-30MAP, 2014 WL 1329355 (M.D. Fla. Apr. 2, 2014); *Varnes v. Home Depot USA, Inc.*, CV-622-J-99TJC-JBT, 2012 WL 5611055 (M.D. Fla. Nov. 15, 2012); *Hache v. Damon Corp.*, 8:07-cv-1248-T-30EAJ, 2008 WL 912434 (M.D. Fla. Apr. 1, 2008); *Conn. Gen. Life Ins. Co. v. Jones*, 764 So. 2d 677, 682 (Fla. 1st DCA 2000); *see also Shaw v. Hyatt Int'l Corp.*, 461 F.3d 899, 901-02 (7th Cir. 2006) (where the court noted a failure to satisfy contractual terms is not a deceptive act); *Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 971 (N.D. Ill. 2008) (in order to be deceptive, a mere failure to satisfy contractual terms does not suffice as "[t]his type of misrepresentation occurs anytime defendant breaches a contract"). Accordingly, Plaintiffs' FDUTPA claim must be dismissed.

The Plaintiffs have failed to establish at least two critical elements of their claim. First, they have failed to prove the claims are deceptive simply because of alleged individualized failures in an industry that Plaintiffs assert sales approximately $2.4 billion dollars in 2018.[2] Under Plaintiff's theory, an automobile that failed to start once would be mislabeled as an "automobile." Plaintiffs have no allegation showing any plausible theory the product has a sufficiently high failure rate to support a reasonable inference that consumers were likely be misled under the circumstances. Plaintiffs only relied upon label. (D. Sweeney Responses to Interrogatory No. 5). Further, Mrs. Sweeney only remembers relying on the following representations on the label: (1) "flushability"; (2) "sewer and septic safe"; and (3) "use one or two wipes per flush." She also relied on a statement on the label - "compare to Cottonelle Fresh

---

[2] Plaintiffs do not allege that all or even some significant percentage of flushable wipes cause plumbing damages. Indeed, the FAC asserts only that there is "currently no legally enforceable requirements that a product must meet in order to claim it is flushable." FAC, ¶ 28. Yet, Plaintiffs also allege that the "flushable" wipes category is growing at 12.1% annually to reach 2.4 billion by 2018. Plaintiffs' estimates would suggest that the flushable wipes market had sales of $1.7 billion in 2015 and at 5 cents per sheet that would amount to 34 billion individual wipes. FAC ¶ 28. (Defendant Rockline has not independently confirmed these claims.)

Care flushable wipes." *See* ¶ 64 (FAC) and (H. Sweeney Trans. pp. 83-85)  Mr. Sweeney never bought wipes.  (D. Sweeney Trans. p. 13, (7-14)).

As a matter of law, no reasonable person would believe there is never a chance that either toilet paper or flushable wipes would pose a clogging risk.  (H. Sweeney Trans. p. 176, (13-24)). If this much was true, there would be no practical need for plungers.  (D. Sweeney Trans. p. 27). Plaintiffs fail to allege that flushable wipes cause <u>more</u> clogs than traditional toilet paper. Plaintiffs even recognize that toilet paper, alone, can cause clogs. The Equate package explicitly states, "Equate wipes break apart after flushing <u>reducing the chances</u> of blockages at home or in waste management systems." (¶¶ 66 and 68) (emphasis added)  Further, the Equate label warns customers to use one or two wipes, as well as explicitly stating "safe for properly maintained sewer and septic fixtures." (¶ 65, FAC)  Similarly, Cottonelle flushable wipes include labeling that its products are "safe for properly maintained sewer and septic" and it states "for <u>best</u> flushability, use only one or two wipes per flush."  ¶ 44, (FAC) (emphasis added). Equate's warnings require a common sense interpretation that some risk is inherent in the use of flushable wipes.  The labels contradict Plaintiffs' assertions that the product assures customers there never will be a clogging incident.  *See* ¶44 (FAC).  "Cottonelle for best results flush only or two clothes at a time."; *also see* ¶¶ 48, 51.  Plaintiff's own comparison to toilet paper negates any suggestion that flushable wipes will never cause a clog. *See* ¶¶ 49 and 55.

Plaintiffs have added to the FDUTPA count various non-disclosure theories primarily alleging that plumbing conditions might affect the flushability of the product and indicating there are concerns about the "legitimate concerns" of Defendant's product testing in "real world" conditions. (¶ 131). As to the first claim, common sense would inform a "reasonable consumer" that an inadequate plumbing system would be more likely to have clogs. Plaintiffs do not even

suggest their new home plumbing was not "properly maintained." Additionally, those risks were disclosed. *See* ¶¶ 65, 68-69 (FAC). As to the testing concerns, the KC labels identify the INDA/EDANA flushability guidelines which are readily accessible on the internet explaining the testing process. *See* ¶ 41, and "flushability" on website. (http://www.inda.org/store/store-items/flushability-test-methods).

The duty Plaintiffs seek to impose to disclose of <u>opinions</u> that the industry standard testing have been challenged would violate Defendants' First Amendment rights by *compelling* Defendants to speak regarding matters of disputed opinion. *See Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio*, 471 U.S. 626, 651 (1985). State action may require businesses to disclose accurate facts without running afoul of the First Amendment as long as the disclosures are reasonably related to a governmental interest. *Pacific Gas & Electric Co. v. Public Utilities Commission of California*, 475 U.S. 1133, 106 S.Ct. 903, 906 (1986). However, the State cannot compel disclosure of *opinions* the speaker does not agree with. *Id.* at 906-913. *CTIA- The Wireless Association v. City and County of San Francisco*, 494 Fed. Appx. 752, 753-54 (9th Cir. 2012) (government could not compel cell phone providers to disclose accurate facts relating to risk of cell phone use, because it included opinions of the government as well). In this case, Plaintiffs allege Defendants were required by law to disclose disputed opinions about its test methodology. Even if Plaintiffs actually had alleged what those disputes were, it is particularly unjustified because of the detailed information publically available on the INDA website. (http://www.inda.org/store/store-items/flushability-test-methods).

### B.   Plaintiffs Have Failed to Allege Injury Under FDUTPA

Plaintiffs <u>only</u> assert a price premium damage claim under FDUTPA. *See* ¶ 141 (FAC). Section 501.211(2), Florida Statutes, allows a person who has suffered a loss as a result of a

violation of that part, to recover "actual damages" plus attorney's fees and costs as provided by Section 501.2105. "Actual damages" does not include repair costs, damage to other property, diminished value, punitive damages, speculative damages, subjective feelings of disappointment, or nominal damages. Fla. Stat. § 501.211(2); *Dolphin LLC v. WCI Communities, Inc.*, 715 F.3d 1243, 1250 (11th Cir. 2013) (citing *Rollins Inc. v. Butland,* 951 So. 2d 860, 869-70 (Fla. 2d DCA 2006)). Furthermore, the clear language of the statute requires direct causation by the alleged deceptive or unfair act or practice and Florida courts have consistently required causation in fact.

Instead, it is clear Plaintiffs' theory of injury is that class members should recover the "price premium," not because they had a plumbing problem or other recoverable damages, but because they paid extra for a flushable wipe that allegedly creates the risk of a plumbing problem. *See* FAC ¶ 13, 180. This position is untenable because those putative class members who did not have a plumbing problem got exactly what they were entitled to and what they bargained for  – a flushable wipe that flushed.  In other words, the putative class has not experienced a manifestation of the alleged defect, and therefore has no viable claims. *See Cohen, D.M.D. v. Implant Innovations, Inc.*, 259 F.R.D. 617, 643-44 (S.D. Fla. 2008) (rejecting class certification of deception claim of alleged failure to disclose unacceptable failure rate because each class member would have to show not only deception, but causation and damages).

For example, in *Clear Marine Ventures, Ltd. v. Brunswick Corp.*, 08-22418-CIV, 2010 WL 528477, *3 (S.D. Fla. Feb. 11, 2010), the owner of a luxury boat sued Brunswick alleging that a defect in the hull created an unacceptable risk and poor performance.  Among the damages sought were diminution in value based upon a poor reputation for the boat and aesthetic undesirability as well as "[r]isk of hull fracture failure in open waters, due to internal delaminating or air pockets." *Id.* The Southern District of Florida granted the defendant's motion

to dismiss the amended FDUTPA count with prejudice because Plaintiff had no "actual damages" beyond a speculative level and explained that "speculations on [the boat's] possibility to break at some future date does not give [defendant] notice beyond labels and conclusions on a hypothetical level." *Id.* at *5; *see also Lumbardo v. Johnson and Johnson Consumer Companies Inc.*, 2015 W.L. 5025466 at *5, *6 (S.D. Fla.) (rejecting false advertising theory asserting price premium service claim was too remote and manufacturer did not establish pricing); *Hennegan Co. v. Arriola*, 855 F. Supp. 2d 1354, 1361 (S.D. Fla. 2012) (explaining "causation must be direct rather than remote or speculative"); *In re Crown Auto Dealerships, Inc.,* 187 B.R. 1009, 1018-19 (Bankr. N.D. Fla. 1995) (no actual damages for purchase of cars that had been stolen); *Maroone Chevrolet, Inc. v. Nordstrom*, 587 So. 2d 514, 519 (Fla. 4th DCA 1991) (interpreting Section 501.211(2) (requiring actual loss and finding no actual injury); *City First Mortg. Corp. v. Barton*, 988 So. 2d 82, 86 (Fla. 4th DCA 2008); *Prohias v. Pfizer*, 485 F. Supp. 2d 1329, 1335-39 (S.D. Fla. 2007); *Gen. Motors Acceptance Corp. v. Laesser*, 718 So. 2d 276, 277 (Fla. 4th DCA 1998); *Macias v. HBC of Fla., Inc.*, 694 So. 2d 88, 90 (Fla. 3d DCA 1997).

The central issue is <u>not</u> whether a purchaser who suffers a plumbing clog caused by a flushable wipe has a cause of action under applicable state law.  The fundamental issue is whether a customer who uses flushable wipe that never causes a clog is injured and entitled to damages under a price premium theory because sometimes wipes clog <u>someone</u> else's plumbing. Even if Plaintiff's theory was accepted, the FAC concedes Rockline only promised that "wipes break apart after flushing reducing the chances of blockages at home and in waste management systems." ¶ 66.  A threshold issue is whether "flushable" wipes that flush down the toilet, out of the home, and into the sewage system or septic tank is "flushable."  The Plaintiffs have identified "flushability" as the key attribute of the product line and the injury they claim is harm to the

12

plumbing system – a clog.  The FAC asserts this definition throughout the FAC.  *See* ¶¶ 10, 11, 24.  If the product when used as instructed clears the consumers home without clogging, it is "flushable" by the common sense definition of the term, and in any event, caused no injury-in-fact under 501.211(2), Fla. Stat.[3]  A flushable wipe that does not cause a clog or other plumbing injury has performed as promised and by definition, the consumer has received the benefit of the bargain.

Regardless of the legal theory, Florida law does not permit recovery absent causation and injury in fact.  The issue is whether "causation" and "actual damages" can be properly pled plausible as to those individuals who have not had a clog caused by a flushable wipe.  However, two district courts have already rejected this exact injury theory regarding flushable wipes.  *See Davidson v. Kimberly-Clark Corp.*, C14-1783 PJH, 2014 WL 7247398, *1-*2 (N.D. Cal. Dec. 19, 2014) (rejecting risk of failure in a flushability case because consumer bought the product and stopped using it before any plumbing problem because she did not believe the wipes dispersed with the result that they may clog municipal sewer systems and sewage pumps); *Meta v. Target Corp.*, 4:14CV0832, 2015 WL 574825, *5 (N.D. Oh., Feb. 11, 2015) (holding Plaintiffs could not maintain a claim where "the consumers (and vast majority of putative Plaintiffs) in this case who bought the Up and Up® wipes and used them for their intended purpose, flushed them, and suffered no injury were not damaged").

Even if Plaintiffs claim that some wipes caused a plumbing injury, Plaintiffs cannot state a cause of action for purchased wipes that occurred after the clog or did not contribute to a clog.  Significantly, they used flushable wipes at their prior house between March 2004 and continued to use them in 2009 when they moved into their home, and the first and only alleged plumbing

---

[3] Some of Plaintiffs' allege that the "flushable wipes" "break apart like toilet paper." *See* ¶ 69.  However that statement is qualified by the phrase reducing the chances of blockages.  In any event, the point is whether they pass through the purchasers' plumbing without causing damage or a clog.

failure was over two years later at their second home when Plaintiffs' children were being toilet trained. The Plaintiffs do not explain how one clog in seven years that they attribute to flushable wipes establishes some unreasonable risk or proves the existence of a defective product. *See also* (H. Sweeney Answer to Interrogatory Nos. 4 and 5). Plaintiffs allege they purchased flushable wipes from December 24, 2010 to November 13, 2011. Plaintiffs identify the purchase of only one box of Equate wipes, specifically on March 1, 2014, two years and three months after the clog. *See* (FAC 97).

FDUTPA requires injury directly caused by the violation. For example, in *Rollins*, the Florida Second District Court of Appeals, in a termite case, rejected a similar attempt by Plaintiffs in a class action to use a price premium theory as damages for both those who suffered an actual injury versus those who did not. *See* 951 So. 2d at 873. The court expressly rejected Plaintiffs' attempt to prove damages based upon expert testimony of diminished value for those consumers who used the service but experienced no termite damages, and explained:

> Nevertheless, it is certain that many members of the putative class did not experience actual loss resulting from deficient performance by Orkin or from a reinfestation of subterranean termites. The members of the putative class who experienced no actual loss have no claim for damages under FDUTPA. To be sure, some of the deceptive acts and unfair practices alleged by the Appellee might constitute breaches of contract for which a customer who experienced no actual loss might recover nominal damages in a separate action on the Contract. But FDUTPA does not provide for the recovery of nominal damages, speculative losses, or compensation for subjective feelings of disappointment.

*Id* at 873; *see also Kia Motors Am. Corp.*, 985 So. 2d at 1139 (holding the Plaintiff was not a proper class representative because he sought "compensation not only for class members whose brakes have manifested a deficiency, but also for those whose breaks have performed

14

satisfactorily"). Although these cases are class certification cases, they identify the elements of FDUTPA that have to be alleged and proven.

The critical point is only those persons who had an actual failure have suffered an injury-in-fact. The *Kia* court was faced with this issue and explained that by making the manifestation of the alleged defect irrelevant, those who never have a problem are overcompensated, while those who have manifestations of a problem are either undercompensated having already been compensated for the risk of the defect affecting them or paid twice. *Kia Motors,* 985 So. 2d at 1139. If Plaintiffs' "no injury" theory was accepted, the result would ignore the reality of compensating persons who are actually injured by providing a windfall of speculative damages under the guise of the reduction in the value of the product. This result is inconsistent with the principle, "no injury, no tort," which is an ingredient in every state's law. *In the Matter of Bridgestone/Firestone, Inc., Tires Prod. Liab. Lit.,* 288 F.3d 1012, 1017 (7th Cir. 2002). (*Estabrook)* This logic is more compelling in the instant case, because the wipes are obviously not going to be continuously used like a car that might have a manifestation of the defect years later. Once it flushes properly, any dispute among experts as to the best design of a flushable wipe is mooted by the simple fact that the product worked. Adoption of Plaintiffs' theory is likely to bar claims that arise later based either on improper claim splitting, or triggering the accrual of the statute of limitations as the date of purchase, instead of the date of manifestation of the injury.

## VII.    COUNTS III (EXPRESS WARRANTY) AND IV (IMPLIED WARRANTY OF MERCHANTABILITY), DO NOT ASSERT A CAUSE OF ACTION, ABSENT INJURY TO PLUMBING AND NOTICE TO THE WARRANTOR

Each separate purchase of a relevant KC brand or Equate flushable wipe is a separate potential claim that is asserted under a price premium theory and/or a plumbing injury theory in

the respective subclasses.  Plaintiffs seek damages for the sale of Equate wipes on March 1, 2014 that could not have conceivably contributed to the November 13, 2011 clog, or any clog since Plaintiffs no longer flushed the wipes they purchased.  Plaintiffs must prove that class members paid the price premium or that certain purchases of flushable wipe caused a plumbing clog. Plaintiffs allege four specific purchases of wipes after the only plumbing incident of Nov. 13, 2011 based on their recollection.  The only purchase of an Equate product tab that is identified is on March 1, 2014, two years and three months after the plumbing clog.  FAC 97.  Plaintiff's claim for breach of warranty as to the March 1, 2014 clog cannot be reasonably associated with causing a plumbing failure.  There is no plausible price premium theory under any warranty claim or for any damage claim for wipes that were successfully flushed.

Plaintiffs' two warranty claims assert that the products are defective because they were not flushable as represented and cause damage to plumbing.  *See* FAC, ¶¶144-149 (Count II – Express warranties) and ¶¶153-156 (Count III-Implied Warranty merchantability).  A necessary element to establish a breach of either an express warranty or an implied warranty of merchantability is causation-in-fact and injury.  §672.313; *Cohen, D.M.D. v. Implant Innovations, Inc.*, 259 F.R.D. 617, 642 (S.D. Fla. 2008).  *See Kia Motors*, 985 So.2d at 1140 (citing *Amoroso v Samuel Friedland Family Enterp.*, 604 So.2d 827, 833 (Fla. 4th DCA 1992) (refusing to certify class action in case asserting express warranty and implied warranty because a necessary element is not only a defect but the defect caused the injury); *McGraney v Ford Motor Co.*, 282 So.2d 828, 879 (Fla. 1st DCA 1993).  Because proof of causation and damages is required to establish a breach of warranty, the March 1, 2014 purchase or any other transaction that did not cause the November 13, 2013 plumbing incident fails to state a cause of action.  Nor can Plaintiffs use a price premium theory when the alleged defect never occurred.  *See Kia*

*Motors*, 985 So.2d at 1141.  In fact, the manifestation of the injury requirement is even stronger in the instant case for the obvious reason the wipes are used only once.

The evidence is undisputed that the Sweeneys made no effort to enforce any warranty rights despite the in constant shopping at Wal-mart and knowledge of the alleged breach.  (H. Sweeney Trans. p. 93, (8-12); D. Sweeney's Response to Interrogatory No. 6).  Defendant Rockline recognizes that although the court dismissed Plaintiffs' warranty claims relating to the failure to identify which products caused the plumbing injury, it held that Plaintiffs had alleged sufficient facts to establish notice.  *See* Doc. 69, p.7.[4]  However, the existence of the defect is not the violation of a warranty provision.  Instead, it is failure after timely notice to abide by the warranty.  *Horton v Woodman Labs, Inc.*, 2014 W.L. 1329355 (M.D. Fla. 2014)*3; *American Coach Lines of Orlando, Inc. v North American Bus Industries*, 2011 W.L. 653524 (M.D. Fla. 2011) *19 (where there is an agreement to repair or replace, the warranty is not breached until there is a refusal or failure to honor the warranty applying Georgia UCC).

Regarding the notice issue, the parties, including Rockline, failed to adequately call to the court's attention the exact language of Section 672.607(3)(a).  Rockline is the private label manufacturer for Wal-Mart.  (¶¶ 5, 6, & 8, FAC).  Section 672.607(3)(a) explicitly requires that the <u>buyer</u> must provide notice to the seller within a reasonable time after discovering the breach <u>or be barred from any remedy.</u>"  (emphasis added)  The buyer has the burden of proof as to notice, and must allege that it provided timely notice under ¶2-607(3)(a).  *See Gen. Matters, Inc. v. Paramount Canning Co.*, 382 So.2d 1262, 1264 (Fla. Dist. Ct. App. 1980); *Eastern Airlines, Inc. v. McDonnell Douglas Corporation*, 532 F.2d 957, 970-73 (5th Cir. 1976) (2-607 also requires that a seller be reasonably protected against stale claims arising out of transactions

---

[4] This rational is inconsistent with the purpose of §607(3)(a) to provide an opportunity to cure.  *See Vuotto v. Abbott Laboratories, Inc.*, No. 10C725  2011 WL 3876 923 (N.D. Ill. Aug. 31, 2011) *3 (<u>buyer</u> must provide actual notice, even if seller had "actual or constructive notice.")

which a buyer has led him to believe are closed"); *Vanult Electric Construction, Inc. v. Selco Manufacturing Com.*, 233 Fed. Appx. 105 (3d DCA 2007) (buyer has burden of proving reasonable notice under § 2-607(3)(a)). Although one could argue that Rockline is not the seller, the Court's order on motion to dismiss essentially treats the manufacturer as the seller by its denial of the privity defense. *See* Doc. 69, p. 7. In *Horton v. Woodman Cabs, Inc.*, 2014 WL 1329355 (M.D. Fla.) *3 court extended the manufacturer warranty to the ultimate purchase, and held that the buyer had an obligation to give that manufacturer notice "so the manufacturer receives an opportunity to remedy the defect itself" citing *Gen. Matters supra*). In any event, the policy of providing a method to resolve disputes by notice is consistent with the cases that require notice to both the seller and manufacturer 2-607(3)(a). Even if § 2-607(3)(a) is interpreted as requiring notice to the retailer, the warranty on the package includes a notice provision and provides a refund for any customer who is dissatisfied and provides the required contact information by calling a toll free number. The fact that the number is Wal-Mart's number is of no consequence, since the customer can only recovery once, and the manufacturer has a duty to either pay the claim or indemnify the retailer. *See Gen Matters*, 382 So.2d at 1263. *See* Notice of Filing of Equate Warranty, Exhibit 5.

It is also significant that Plaintiffs waited over three years to file suit – the first notice even provided to defendants. Instead, this began "investigating" how widespread the problem was," instead, of trying to resolve the dispute. They preserved only the evidence and memories of purchases became stale or perhaps less closely related to objective facts. These factors illustrate why sound policy requires notification to all parties who are extending warranties.

**B.**    **Plaintiffs    Cannot    Demonstrate    that    Any    Defendants'    Alleged Misrepresentations Caused Them To Purchase Flushable Wipes or Pay a Premium For Them.**

Rockline adopts the statement of Plaintiffs' claims and allegations from the Motion of

Wal-Mart and Kimberly-Clark.

## VIII.  THE AMENDED COMPLAINT SHOULD BE DISMISSED AS AN IMPROPER SHOTGUN PLEADING.

Rockline adopts the statement of Plaintiffs' claims and allegations from the Motion of

Wal-Mart and Kimberly-Clark.

## IX.    PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN BECAUSE THE AMENDED COMPLAINT DEMONSTRATES THAT THE REQUIREMENTS FOR CLASS CERTIFICATION CANNOT BE MET

Rockline adopts the statement of Plaintiffs' claims and allegations from the Motion of

Wal-Mart and Kimberly-Clark, and makes the following additional argument:

The record before the court illustrates the unexpected twists and turns a class action can

take when a theory of common proof is subject to discovery and the truth finding process.

Plaintiffs' assert in their complaint that the only reason why they purchased the product was

because of the "flushability" characteristic.  Since mid-November 2011 at least up until their

deposition, Plaintiffs continued to buy the flushable wipes of defendants and for reasons entirely

unrelated to flushability and paying the so "called" premium.  These Plaintiffs cannot be accused

by defense counsel of being "perfect Plaintiffs."

An appropriate class action should involve a situation where the class representatives by

proving their own case, will necessarily prove the case of each class representative, or at least

critical issues that would resolve the dispute.  *DWFII Corp. v. State Farm Mutual Automobile

Ins. Co.*, 271 F.R.D. 676, 687 (S.D. Fla. 2010).  A comparison of the Sweeneys' individual case

against the class pleadings demonstrate how poorly the facts fit the theory of the case or the

model of a class action. Worse, the price premium theory is an obvious attempt to provide compensation unrelated to injury. This approach allows persons who used the product satisfactorily for years, who never phoned in a complaint or claim, or stopped by the Wal-Mart service desk to obtain "compensation" for non-existent injuries. In fact, Plaintiffs assert this product line has grown and consumers have been voting approval with their wallets. (¶ 28, FAC) These types of no-injury class actions present myriad obstacles to class certification and are the type of class actions in which certification simply increases the leverage to obtain a settlement based on what the Eleventh Circuit has characterized as black mail. *Rutstein v. Avis Rent-A-Car Systems,* 211 F.3d 1228, n.21 (11th Cir. 2000).

The complex factual issue revealed by the Sweeneys' experience demonstrates that the individual issues predominate, especially those of whether there was ever a product failure for a customer, proof of causation the reasons for the purchase and the use of the product all lead to the conclusion that this proceeding would only resolve the Sweeneys' claim.

Undoubtedly, Plaintiffs will suggest some efficiency enhancing rational and "common proof" which will purportedly allow a way to prove Plaintiffs' claims on a class wide basis. Administrative efficiency cannot be used to preclude the defendants from conducting discovery or offering proof on any issue which is not conclusively proven by the Plaintiffs' proving their own case. It is hard to imagine what facts would fall into that category. Did their plumbing failure prove all flushable wipes are defective even though they claim not to know which wipe caused the clog? Under *Dukes v. Wal-Mart Stores,* 131 S.Ct. 2541 (2011), the defendants cannot be denied an opportunity to present relevant evidence simply because it is inconsistent with Plaintiffs' theory of class wide liability. Rule 23 cannot abridge, enlarge, or modify any substantive right, *Dukes* at 131 S.Ct. 2511, 2561 (2011). Substantive elements of proof required

under state law cannot be wished away in the name of administrative convenience or the purported relative of efficiency of the class procedure.

If this case were to proceed as a class action, the Sweeneys would face formidable obstacles, some relating to their credibility and others relating to then past November 2011 use of flushable wipes. The difficulty of proof as to what caused the clog and which product was involved pose risks that is likely to defeat the entire class action. *Hillis v. Equifax Consumer Serv., Inc.,* 237 F.R.D. 491, 499 (N.D. Ga. 2006) (citation omitted) ("Typicality cannot be satisfied when a named plaintiff who proved his own claim would not necessarily have proved any else's claim.") The lack of typicality and adequacy as the plumbing injuries are so apparent, that little discussion is needed, especially in the context of this record.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court strike Plaintiffs' class allegations, dismiss the Amended Complaint, and direct the Clerk to enter a judgment for Defendants and close the case.

Respectfully submitted,

_s/ Douglas B. Brown_

J. RICHARD CALDWELL, JR., ESQUIRE
Florida Bar No. 131265
E-mail:  dcaldwell@rumberger.com (primary)
E-mail:  docketingtpa@rumberger.com and
dcaldwellsecy@rumberger.com (secondary)
DOUGLAS B. BROWN, ESQUIRE
Florida Bar No. 242527
E-mail:  dbrown@rumberger.com (primary)
E-mail:  docketingorlando@rumberger.com and
dbrownsecy@rumberger.com (secondary)
JESSICA A. TETRICK, ESQUIRE
Florida Bar No. 085506
E-mail: jtetrick@rumberger.com (primary)
E-mail: docketingtpa@rumberger.com and
jtetricksecy@rumberger.com (secondary)

RUMBERGER, KIRK & CALDWELL
A Professional Association
100 North Tampa Street, Suite 2000
Post Office Box 3390
Tampa, Florida  33601-3390
Telephone:  (813) 223-4253
Telecopier:  (813) 221-4752

300 South Orange Avenue, Suite 1400
Post Office Box 1873
Orlando, Florida 32801
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133

_Attorneys for Defendant Rockline Industries, Inc._

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I electronically filed a true and correct copy with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the following: Anthony J. Garcia at anthony@aglawinc.com (*Counsel for Plaintiffs and Proposed Class*), Christopher D. Boutwell at chris.boutwell@bealeyallen.com, Rhon E. Jones at rhon.jones@beasleyallen.com and William H. Fagerstrom at will.fagerstrom@beasleyallen.com (*Pro Hac Vice Counsel for Plaintiffs and Proposed Class),* Chris S. Coutroulis at ccoutroulis@cfjblaw.com and E. Kelly Bittick, Jr. at kbittick@cfjblaw.com (*Counsel for Defendant Kimberly-Clark Corporation*) and James Mizagala at jmizgala@sidley.com, Daniel Spira at dspira@sidley.com and Kara McCall at kmccall@sidley.com (*Pro Hac Vice Counsel for Defendant Kimberly-Clark Corporation*) and Gregory W. Kehoe at kehoeg@gtlaw.com *(Counsel for Defendant Wal-Mart Stores, Inc.)* this 5th day of November, 2015.

_s/Douglas B. Brown_
J. RICHARD CALDWELL, JR., ESQUIRE
Florida Bar No. 131265
E-mail:  dcaldwell@rumberger.com (primary)
E-mail:  docketingtpa@rumberger.com and
dcaldwellsecy@rumberger.com (secondary)
DOUGLAS B. BROWN, ESQUIRE
Florida Bar No. 242527
E-mail:  dbrown@rumberger.com (primary)
E-mail:  docketingorlando@rumberger.com and
dbrownsecy@rumberger.com (secondary)
JESSICA A. TETRICK, ESQUIRE
Florida Bar No. 085506
E-mail: jtetrick@rumberger.com (primary)
E-mail: docketingtpa@rumberger.com and
jtetricksecy@rumberger.com (secondary)

RUMBERGER, KIRK & CALDWELL
A Professional Association
100 North Tampa Street, Suite 2000
Post Office Box 3390
Tampa, Florida  33601-3390
Telephone:  (813) 223-4253
Telecopier:  (813) 221-4752

300 South Orange Avenue, Suite 1400
Post Office Box 1873
Orlando, Florida 32801
Telephone:  (407) 872-7300
Telecopier:  (407) 841-2133

_Attorneys for Defendant Rockline Industries, Inc._