## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

DENNIS PATRICK SWEENEY, JR. , On
behalf of themselves and all other
similarly situated and HEATHER RENEE
COPHER-SWEENEY, On behalf of
themselves and all other similarly
situated,

      Plaintiffs,

v.                                         Case No: 8:14-cv-3201-T-17EAJ

KIMBERLY-CLARK CORPORATION,
WAL-MART STORES, INC., and
ROCKLINE INDUSTRIES, INC.,

      Defendants.

_____

### ORDER GRANTING IN PART AND DENYING IN PART
### DEFENDANTS' MOTIONS TO DISMISS, OR ALTERNATIVELY
### FOR SUMMARY JUDGMENT, AND TO STRIKE CLASS ALLEGATIONS

This cause came before the Court pursuant to *Defendants Kimberly-Clark
Corporation and Wal-Mart Stores, Inc.'s Joint Motion to Dismiss or, Alternatively, for
Summary Judgment, and Motion to Strike Class Allegations* (Doc. No. 75) (the "**KC
Motion**") filed by Defendants, Kimberly-Clark Corporation ("**KC**") and Wal-Mart Stores,
Inc. ("**WM**"), the *Defendant Rockline Industries, Inc.'s Motion to Dismiss, or in the
Alternative Motion for Summary Judgment and Motion to Strike Class Allegations* (Doc.
No. 76) (the "**RL Motion**" and together with the KC Motion, the "**Motions**") filed by
Defendant, Rockline Industries, Inc. ("**Rockline**," and together with KC and WM, the
"**Defendants**"), the responses in opposition thereto (Doc. Nos. 86 & 87) (the
"**Responses**") filed by the Plaintiffs, Dennis Patrick Sweeney, Jr. ("**Mr. Sweeney**") and
Heather Renee Copher-Sweeney ("**Mrs. Sweeney**"), on behalf of themselves and all

others similarly situated (the "**Plaintiffs**"), and the replies (Doc. Nos. 106 & 107) (the "**Replies**") filed by the Defendants.  For the reasons set forth below, the Motions are **GRANTED IN PART AND DENIED IN PART.**

## I.    Introduction

The primary issues raised in the Motions are: (i) whether a consumer, who continues to purchase a defective product for reasons independent of the defect, has standing to prosecute a Florida Deceptive and Unfair Trade Practices Act, Fla. Stat., §§ 501.201 *et seq.* (hereinafter referred to as "**FDUTPA**") claim under a "price premium" theory of damages; (ii) whether a plaintiff can make a prima facie case against multiple defendants absent individualized evidence of which defendant caused her injuries; and (iii) whether it is appropriate to strike class allegations where it appears that the plaintiff will be unable to establish predominance under Rule[1] 23(b)(3).

As to the first issue, the "price premium" theory of damages is predicated on the notion that a consumer who pays more for a product due to a manufacturer's misrepresentations is damaged by paying a higher price for the good than is otherwise warranted.  This theory is most commonly asserted where a plaintiff chooses one particular product over another due to the manufacturer's representations that the product is somehow superior to the alternative.  Where the manufacturer's representations are not true, the consumer has standing to sue for the "price premium" she paid for the purportedly superior product.  Here, the undisputed facts and record evidence demonstrate that the Plaintiffs continue to purchase the Defendants' "flushable" wipes in lieu of the Defendants' cheaper, non-flushable wipes due to the fact that they believe the

---

[1] All references to a "**Rule**" or to the "**Rules**" are to the Federal Rules of Civil Procedure.

"flushable" wipes are more desirable from an esthetic perspective.   As a result, the Plaintiffs cannot genuinely assert that they have been damaged by paying a "price premium" for the "flushable" wipes, which they purchase for separate, esthetic reasons. Rather, the Plaintiffs' theory of damages is far more tenuous, as it requires the Court to calculate the hypothetical price at which the "flushable" wipes should sell absent the representation that they are "flushable."   Determining such a price is too speculative an endeavor to satisfy the requirements of Article III and, as a result, the Plaintiffs' lack standing to pursue a FDUTPA claim.

With respect to the second issue, the undisputed facts and record evidence do not specifically indicate that either or both Defendants' wipes caused the Plaintiffs' damages. However, the record does contain evidence that the Plaintiffs had purchased and used both Defendants' wipes prior to experiencing plumbing difficulties, and that a three to four inch ball of wipes was removed from their plumbing system.   The foregoing evidence, while far from conclusive regarding the issue of causation, gives rise to a reasonable inference that the Defendants' wipes, either individually or in the aggregate, were a cause of the Plaintiffs' plumbing damage.   Therefore, the Court will deny the Defendants' motion for summary judgment as to the Plaintiffs' remaining claims.

Finally, with respect to class certification, the dismissal of the Plaintiffs' FDUTPA claim makes it very unlikely that the Plaintiffs will be able to obtain class certification under the predominance requirement set forth in Rule 23(b)(3).   This is because the Plaintiffs' remaining claims are based on plumbing damages, which likely require individualized inquiries into causation and damages.   Nevertheless, given that the Plaintiffs have plead class allegations under the other provisions of Rule 23(b), the Court believes it would be

premature to strike the Plaintiffs' class allegations solely on the basis that the possibilities of obtaining class certification under Rule 23(b)(3) appear remote. Therefore, the Court will deny the Defendants' motion to strike, and allow the class certification issue to be decided in the context of any motion for class certification filed by the Plaintiffs.

II.    **Background**

    A.    **Procedural Background**

The Plaintiffs commenced this action by filing a *Class Action Complaint* (Doc. No. 1) (the "**Original Complaint**") against the Defendants on December 24, 2014. On March 26 and 30, 2015, the Defendants filed motions to dismiss the Original Complaint for failure to state a claim. (Doc. Nos. 41, 42, 47). On September 15, 2015, the Court entered an *Order* (Doc. No. 69) (the "**Dismissal Order**") dismissing the Original Complaint without prejudice. The Dismissal Order was predicated on, among other things, the fact that the Plaintiffs did not identify the specific product(s) responsible for causing their damages. "Without identifying the specific product responsible for Plaintiffs' damages," the Court concluded that "Plaintiffs cannot satisfy the causal connection prong – that Plaintiffs' injury was causally connected to" the Defendants' conduct. (Dismissal Order, at 6).

Following the entry of the Dismissal Order, the Plaintiffs filed a *First Amended Class Action Complaint* (Doc. No. 71) (the "**FAC**") on October 9, 2015. The FAC consists of the following counts: Count I – Violations of FDUTPA; Count II – Breach of Express Warranty; Count III – Breach of Implied Warranty of Merchantability; Count IV – Negligence; Count V – Negligent Misrepresentation; Count VI – Negligent Failure to Warn; Count VII – Strict Liability Failure to Warn; and Count VIII – Unjust Enrichment. In addition, the Plaintiffs seek class action certification on behalf of all Florida residents who purchased Cottonelle and Equate brand flushable wipes between December 24, 2010

and the present, as well as sub-class certification for all similarly situated persons who "have suffered damages or paid costs to repair clogs, blockages, or other adverse plumbing consequences to their on-site plumbing or wastewater conveyance and treatment system(s)." (FAC, at ¶ 112).

The Defendants filed the Motions on November 5, 2015. Through the Motions, the Defendants primarily assert that the FAC should be dismissed, and/or that summary judgment should be granted in their favor, due to the fact that (i) the Plaintiffs' lack standing to assert a "price premium" theory of damages under FDUTPA, and (ii) the record does not contain sufficient evidence that either Defendant caused the Plaintiffs' plumbing damages. In addition, the Defendants ask the Court to strike the Plaintiffs' class allegations due to an inability to establish, among other things, predominance under Rule 23(b)(3). The Plaintiffs filed their Responses on November 25, 2015, and the Defendants filed their Replies on December 22 and 28, 2015.

### B.    Factual Background

Through the FAC, the Plaintiffs allege that since December 24, 2010 they have made "several purchases" of Cottonelle and Equate brand "flushable" wipes. (FAC, at ¶ 97). The Plaintiffs specifically identify five (5) separate purchases of Cottonelle and Equate brand "flushable" wipes that occurred on December 29, 2010, May 11, 2011, July 9, 2011, September 8, 2011, and March 1, 2014, respectively. (FAC, at ¶ 97). The Plaintiffs further allege that on or about November 13, 2011 they experienced a plumbing clog at their home. (FAC, at ¶ 100). During the time leading up to the clog, the Plaintiffs testified to having purchased and used both Defendants' wipes. (Mr. Sweeney Dep. Tr. at 19:1—20:1; 174:18-20), (Mrs. Sweeney Dep. Tr. at 36:1-17). Upon discovery of the clog, the Plaintiffs hired Olin Plumbing, Inc. to diagnose and repair the problem. (FAC, at

¶ 101).   According to the Plaintiffs, the plumber, Mr. Olin, removed a three to four inch ball of wipes from the Plaintiffs' plumbing system. (Mr. Sweeney Dep. Tr. at 23:9—24:6; 30:17-22).   The Plaintiffs ultimately paid the plumber $370 to fix the problem. (FAC, at ¶ 103).   Nevertheless, the Plaintiffs did not retain any of the receipts or packaging for the wipes that caused the November, 2011 incident, nor did they retain (or take any pictures of) the physical wipes that comprised the three to four inch ball that was removed from their plumbing system. (Mr. Sweeney Dep. Tr. at 177:1-4; 23:17-24; 30:17-22; Mrs. Sweeney Dep. Tr. at 232:1-16)).

In addition to the November, 2011 plumbing incident, the Plaintiffs claim to have sustained damages as a result of "paying more money per wipe for Defendants' wipes labeled as or represented to be flushable than by purchasing comparable wipes that are not labeled as or represented to be flushable." (FAC, at ¶ 106).   However, the Plaintiffs testified that despite the November, 2011 clog, the Plaintiffs continue to purchase the Defendants' wipes. (Mr. Sweeney Dep. Tr. at 73:19-22).   Specifically, rather than continue to flush the wipes, the Plaintiffs now discard the wipes into the garbage can. (Mrs. Sweeney Dep. Tr. at 235:7-9).   Interestingly, the Plaintiffs continue to purchase the more expensive flushable wipes as opposed to the alternative, non-flushable wipes because "[t]he flushable wipes are smaller and more esthetically pleasing and come in a smaller container which is more appropriate for the bathroom environment." (Mrs. Sweeney Dep. Tr. at 76:1-9).   Mrs. Sweeney also testified that she prefers the flushable wipes because "they don't have cartoon characters on them," and "fit a lot easier in the cabinet or on the shelf behind the toilet." (Mrs. Sweeney Dep. Tr. at 76:9-12).

III.    **Legal Analysis**

A.    **The Motions will be treated as motions for summary judgment**

The Defendants seek dismissal and/or summary judgment on the FAC under Rules 12(b)(6) and 56, and in so doing, rely on materials outside of the pleadings.  Rule 12(d) states that "[i]f on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  The rule goes on to state that "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*

Rule 56, in turn, provides that a motion for summary judgment may be filed "at any time until 30 days after the close of all discovery."  Fed. R. Civ. P. 56(b).  Rule 56 further states that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to a motion for summary judgment], the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  The Eleventh Circuit has held that a district court does not abuse its discretion in ruling on a motion for summary judgment, prior to the completion of discovery, where the non-movant fails to file an affidavit under Rule 56(d). *See Reynolds v. Potter*, 178 F.App'x 998, 999 (11th Cir. 2006).[2]

Here, the issue of whether the Motions should be treated as motions to dismiss, or as motions for summary judgment, was discussed at the parties' preliminary pretrial conference (the "**PPC**") on December 4, 2016 before United States Magistrate Judge

---

[2] The *Reynolds* court cited to former Rule 56(f), which was merged into current Rule 56(d) pursuant to the 2010 Amendments to the Federal Rules of Civil Procedure.

Elizabeth A. Jenkins.   At the PPC, Magistrate Jenkins asked Plaintiffs' counsel what additional discovery they needed to adequately oppose summary judgment. (Tr. of PPC, at 20:2-4).   The Plaintiffs referenced certain outstanding discovery relating to "class issues," specifically "numerosity of the class." (Tr. of PPC, at 20:15-18).   In response, counsel for the Defendants proposed that the Plaintiffs file an affidavit under Rule 56(d) identifying what additional discovery was needed. (Tr. of PPC, at 22:11-21).   Magistrate Jenkins asked counsel for the Plaintiffs whether they could draft and file such an affidavit under Rule 56(d), and Plaintiffs' counsel responded in the affirmative. (Tr. of PPC, at 24:9-15).   To date, the Plaintiffs have not filed any affidavit under Rule 56(d).

Upon review, the Court will treat the Motions as motions for summary judgment for three reasons.   First, the Plaintiffs have not filed a Rule 56(d) affidavit specifically identifying any outstanding discovery needed to adequately respond to the Motions.   The Plaintiffs' failure to file such an affidavit demonstrates that the Motions are ready to be ruled upon; particularly in light of the colloquy at the PPC.   Second, the areas of additional discovery referenced by Plaintiffs' counsel at the PPC, i.e. documentary evidence relevant to class issues such as numerosity, are not germane to the standing and causation issues raised in the Motions and, as a result, would not impact the Court's ruling.   Third, the Motions explicitly state that Defendants seek summary judgment under Rule 56.   Since the Defendants are entitled to move for summary judgment "at any time until 30 days after the close of all discovery," and the Plaintiffs have had an adequate opportunity to respond, there is no reason not to treat the Motions as motions for summary judgment.

**B.**    **Summary Judgment Standard**

Having decided to consider the Motions under Rule 56, the Court must decide whether to grant summary judgment. "Summary judgment is appropriate only when the Court is satisfied that 'there is no genuine issue as to any material fact' and the moving party is entitled to judgment as a matter of law." *Houston v. Hess Corp.*, 2014 WL 1047239, at *1 (M.D. Fla. Mar. 18, 2014) (citing Fed. R. Civ. P. 56(c)). "The moving party bears the burden of showing the absence of any genuine issue of material fact." *Id.* "In deciding whether the moving party has met this initial burden, the Court must review the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party." *Id.* Once the Court determines that the moving party has met its burden, the burden shifts and the non-moving party must present specific facts showing that there is a genuine issue for trial that precludes summary judgment." *Id.* "Failure to show sufficient evidence of any essential element is fatal to the claim, and the Court should grant summary judgment." *Id.* "Conversely, if reasonable minds could find a genuine issue of material fact then summary judgment should be denied." *Id.*

**C.**    **The Plaintiffs lack standing to prosecute their FDUTPA claim under a "price premium" theory of damages.**

"A plaintiff asserting a claim under FDUTPA must establish: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." *Randolph v. J.M. Smucker Co.*, 303 F.R.D. 679, 691 (S.D. Fla. 2014). The first requirement is fairly straightforward: "A deception occurs when there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *Id.* Here, the alleged misrepresentations regarding the flushability of the Defendants' wipes, if proven to be true, could constitute a deceptive act or unfair practice.

As a result, the Court determines that the allegations in the FAC, in addition to the undisputed facts and record evidence, are sufficient for the Plaintiffs to create a triable issue as to the first element under FDUTPA.

While the first element under FDUTPA is easy to comprehend, the causation requirement has led to significant confusion among the courts. Much of this confusion stems from the overlap between the concepts of reliance and causation. *Cf. Nelson v. Mead Johnson Nutrition Co.*, 270 F.R.D. 689, 692 n.2 (S.D. Fla. 2010). With respect to reliance, Florida courts have held that FDUTPA does not require plaintiffs to prove actual reliance. *Davis v. Powertel, Inc.*, 776 So.2d 971, 974 (Fla. 1st DCA 2000). Instead, FDUTPA contemplates an objective reliance standard under which the court must ask "whether the practice was likely to deceive a consumer acting reasonably in the same circumstances." *Id.* Given the lack of an individualized reliance requirement, some courts have questioned whether causation is really an element under FDUTPA. *See Nelson*, 270 F.R.D. at 692 n.2 (noting that the existence of a causation requirement is at odds with the concept that there is no actual reliance element under FDUTPA). However, other courts have reached the opposite conclusion, and required plaintiffs to demonstrate causation on an individualized basis. *See Greenfield v. Sears, Roebuck & Co. (In re Sears, Roebuck & Co.)*, 2012 WL 1015806, at *10 (N.D. Ill. Mar. 22, 2012) ("It is our view that the Florida Supreme Court would . . . require a plaintiff to show that the alleged misrepresentation actually caused him harm . . . which would necessitate individualized proof.").

At this stage of the pleadings, the Court need not decide whether the Plaintiffs must provide individualized proof of causation. This is because the undisputed facts and

record evidence demonstrate that the Plaintiffs lack standing to create a triable issue on the third element of FDUTPA, i.e. that they have suffered "actual damages." "As a general rule, the measure of actual damages under FDUTPA is the difference between the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered." *Smith v. Wm. Wrigley Jr. Co.*, 663 F.Supp.2d 1336, 1339 (S.D. Fla. 2009).   Here, the Plaintiffs are seeking damages under "price premium" theory, which has been recognized as a valid theory of damages under Florida law. *See, e.g.*, *Bezdek v. Vibram USA, Inc.*, 2013 WL 639145, at *8 (D. Mass. Feb. 20, 2013) (concluding "that 'price premium' injury is cognizable under the consumer protection laws in both Massachusetts and Florida.").   In short, the "price premium" theory recognizes that deceptive practices may enable vendors to "charge a premium for a product that the manufacturer would not be able to command absent the deceptive practice." *Nelson*, 270 F.R.D. at 692 n.2.   Thus, consumers who purchase the manufacturer's products necessarily pay a premium for such goods. *Id.*   Accordingly, all consumers who purchase the manufacturer's products suffer actual damages in the form of the "price premium" paid for the goods. *Id.*

Here, the Plaintiffs allege damages under a "price premium" theory as follows: "Absent and but for the Defendants' unconscionable, false, and deceptive representations, omissions, and practices, Plaintiffs and Class members would not have purchased Defendants' flushable wipes, or paid a higher price for Defendants' flushable wipes *rather than purchasing lower cost wipes not marketed, labeled, and represented to be flushable*." (FAC, at ¶ 141) (emphasis added).   This theory of damages is predicated on the fact that the "flushable" wipes sell for three cents more per wipe than similar "non-

flushable" wipes sold by the Defendants. (FAC, at ¶ 9).  Since the Plaintiffs did not get the "flushability" that they paid for, they seek to recover the difference between the purportedly "flushable" wipes "as compared to similar moist wipes that are not represented and marketed to be flushable." (FAC, at ¶ 135).

Notwithstanding the foregoing, the Plaintiffs' deposition testimony reveals that the Plaintiffs have continued to purchase and use the Defendants' "flushable" wipes following the November, 2011 plumbing incident.  However, rather than continue to flush the "flushable" wipes, the Plaintiffs now simply discard the "flushable" wipes into their waste basket.  According to the Plaintiffs, the reason they haven't transitioned from the "flushable" wipes to the less expensive non-flushable version is that they prefer the flushable wipes for esthetic reasons, including the size and appearance of the packaging.

The Defendants contend that the Plaintiffs' continued purchase and use of the "flushable" wipes is fatal to their FDUTPA claim.  In support, the Defendants primarily rely on the case of *Prohias v. Pfizer, Inc.*, 485 F.Supp.2d 1329 (S.D. Fla. 2007). In *Prohias*, the plaintiff filed a FDUTPA claim against Pfizer for making misleading statements regarding the cholesterol-lowering drug Lipitor.  Specifically, the plaintiffs alleged that after they began taking Lipitor for its undisputed cholesterol-lowering benefits, Pfizer misrepresented that Lipitor could also provide users with other, unrelated heart-related benefits. *Id.* at 1336.  The plaintiffs claimed that those misrepresentations increased the public's demand for Lipitor. *Id.*  As a result, the plaintiffs sought "price inflation" damages on the theory that Pfizer's false representations caused them to pay a higher price for Lipitor than the market would otherwise have supported. *Id.*  The *Prohias* court rejected the plaintiffs theory of damages because "in the context of a market for a pharmaceutical

drug, [the plaintiff's theory of] damages [was] too speculative to constitute an injury-in-fact under Article III." *Id.*  Specifically, the court noted that the plaintiff's theory depended "on the faulty premise that the price of Lipitor fluctuates based on the public's knowledge of Lipitor's benefits, even though drug prices . . . are fixed by the product's manufacturer." *Id.* at 1337.  "Thus, to show any damages under the 'price inflation' they . . . would require evidence of the hypothetical price at which Lipitor would sell if not for the allegedly misleading advertisements." *Id.*  According to the court, "[d]etermination of such *hypothetical* price, even with expert proof, is too speculative to be the premise of an 'actual injury' under Article III." *Id.*

Here, much like in *Prohias*, the fact that the Plaintiffs continue to purchase and use the Defendants' "flushable" wipes makes their theory of damages too speculative to constitute an actual injury under Article III.  In so holding, the Court is acutely aware that the Plaintiffs' claim is based on a "price premium" theory, while the claim in *Prohias* was based on a "price inflation" theory.  Nevertheless, in light of the revelation that the Plaintiffs continue to use the "flushable" wipes for reasons unrelated to their "flushability," the Plaintiffs are not truly seeking damages under a "price premium" theory.  Rather, the Plaintiffs appear to believe that they should *pay less* for the "flushable" wipes because they are paying for, but not receiving, the attribute of "flushability."  This theory of damages is, in essence, identical to the "price inflation" theory rejected by the court in *Prohias*.

In light of the foregoing, the Plaintiffs' actual measure of damages cannot be the full three cent difference between the Defendants' "flushable" and non-flushable wipes. Instead, the Plaintiffs' measure of damages is the *hypothetical* price the "flushable" wipes should sell for if marketed as non-flushable.  To calculate such a price, it would be

necessary to quantify how much of the wipes' value is attributable to their flushability versus how much of their value is attributable to esthetics.  Much like in *Prohias*, it is the view of the Court that any "[d]etermination of such *hypothetical* price, even with expert proof, is too speculative to be the premise of an 'actual injury' under Article III." *Id.* at 1337.  As a result, the Plaintiffs lack standing to prosecute their FDUTPA claim under a price premium theory because the undisputed facts and record evidence demonstrate that they continue to pay the alleged "price premium" despite their knowledge and belief that the wipes are not flushable.

**D.    The Plaintiffs' remaining claims are not invalid due to a lack of causation.**

In any products liability action, the plaintiff "bears the burden of proving by a preponderance of the evidence . . . '(1) that a defect was present in the product; (2) *that it caused the injuries complained of*; and (3) that it existed at the time the retailer or supplier or manufacturer parted possession with the product.'" *Pulte Home Corp. v. Ply Gem Indus., Inc.*, 804 F.Supp. 1471, 1486 (M.D. Fla. 1992) (quoting *Cassisi v. Maytag Co.*, 396 So.2d 1140, 1141 (Fla. 1st DCA 1981)) (emphasis added); *see also Guinn v. AstraZeneca Pharm., L.P.*, 598 F.Supp.2d 1239 (M.D. Fla. 2009) ("Florida product liability actions, whether sounding in negligence or strict liability, require proof of proximate cause.").  On this point, it is also "well established under Florida law . . . that identification of the product that caused the harm as the one sold or manufactured by the defendant is an essential element of tort law." *Pulte Homes*, 804 F.Supp. at 1484-85.

Under Florida law, proof of causation requires evidence "that 'but for' the defendant's negligence, the harm would not have occurred." *50 State Sec. Serv., Inc. v. Giagrandi*, 132 So.3d 1128, 1149 (Fla. 3d DCA 2013); *see also IBP, Inc. v. Hady Enters.,*

*Inc.*, 267 F.Supp.2d 1148, 1162 (N.D. Fla. 2002) ("To determine whether cause in fact exists, Florida courts generally follow the but for test: whether there is such a natural, direct, and continuous sequence between the negligence . . . and the plaintiff's injury that it can reasonably be said that *but for* the negligent act or omission the injury would not have occurred." (emphasis in original)).   In addition, "if damages are caused by the concurring force of a defendant's negligence and some other force for which he is not responsible, the defendant is nevertheless responsible if his negligence is one of the proximate causes of the damage." *Guinn*, 598 F.Supp.2d at 1244.

Ordinarily, the issue of causation "must be left to the fact-finder to resolve." *McCain v. Fla. Power Corp.*, 593 So.2d 500, 504 (Fla. 1992).   However, due to the fact that the plaintiff has the burden of proving causation, causation can be resolved by the court where the plaintiff fails to "provide evidence from which a jury could reasonably conclude that, more likely than not . . . the conduct of the defendant was a substantial factor in bringing about the result." *Mount Sinai Med. Ctr. of Greater Miami, Inc. v. Gonzalez*, 98 So.3d 1198, 1203-04 (Fla. 3d DCA 2012); *see also Gooding v. Univ. Hosp. Bldg., Inc.*, 445 So.2d 1015 (Fla. 1984) ("A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant." *Id.* (quoting *Prosser, Law of Torts* § 41 (4th Ed. 1971) (emphasis added).

Here, the record contains evidence that the Plaintiffs had purchased and used both Defendants' wipes prior to the November, 2011 clog.   The record also contains evidence that the Plaintiffs observed their plumber remove a three to four inch ball of wipes from their plumbing system.   Given this evidence, it is reasonable to infer the wipes played

some role in the November, 2011 plumbing incident.  The primary issue the Plaintiffs must overcome, however, is that the record is devoid of any evidence that *either* or *both* of the Defendants' wipes were specifically responsible for the clog.  This issue is exacerbated by the fact that the Plaintiffs did not retain any receipts or packaging from the wipes they believe caused the November, 2011 clog, and did not photograph or preserve the wipes at issue.

Upon review, the Plaintiffs are definitely faced with a daunting task of proving-up causation.   Nevertheless, the fact that the Plaintiffs testified to having used both Cottonelle and Equate brand wipes leading up to the November, 2011 incident, coupled with the fact that the Plaintiffs testified to observing their plumber remove a three to four inch ball of wipes from their plumbing system, is sufficient to give rise to a reasonable inference that both Defendants' wipes were a cause of the clog.  There are, of course, numerous other possible inferences that could arise from the same facts, including that neither of the Defendants' wipes caused the November, 2011 plumbing incident.  However, where reasonable minds could differ, summary judgment is inappropriate.  As a result, the Court will deny the Defendants' motions, as they pertain to causation, without prejudice.

### E.     The Court will not strike the Plaintiffs' class allegations at this stage of the pleadings.

"Where the propriety of a class action is plain from the initial pleadings, a district court may rule on this issue prior to the filing of a motion for class certification." *Vandenbrink v. State Farm Mut. Ins. Co.*, 2012 WL 3156596, at *3 (M.D. Fla. Aug. 3, 2012).  To obtain class certification, the plaintiff must establish the following prerequisites:

(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or

defenses of the representative parties are typical of the claims or defenses of the class; *and* (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a) (emphasis added).  In addition, the plaintiff must demonstrate

that:

(1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; *or* (3) the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Fed. R. Civ. P. 23(b) (emphasis added).

Court have denied class certification in property damage cases where it is apparent that the plaintiffs cannot satisfy the predominance requirement set forth in Rule 23(b)(3). *See, e.g.*, *Kelecseny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 675 (noting that it would be necessary to perform individual inspections of each class member's fuel tank to establish that the defendant's failure to warn caused the plaintiff's damages).  This is particularly true where "there is no single accident or event that caused all of [the class members'] injuries." *Martin v. Home Depot U.S.A., Inc.*, 225 F.R.D. 198, 202 (W.D. Tex. 2004).  In such cases, "adjudicating each claim would require intense scrutiny of each potential plaintiff's property to a degree that would not be feasible" in the context of a class action. *Id.*

Here, the Defendants argue that the Plaintiffs' class allegations should be stricken because, among other reasons, the Plaintiffs cannot prove causation on a class-wide basis.  Specifically, the Defendants argue that to establish that their wipes were a but/for cause of a particular class member's plumbing problems, the Court must consider the type of each class member's plumbing system, the brand(s) of flushable or non-flushable wipes that were used, whether the class member used the wipes according to published instructions, and the extent of each class member's damages.  Upon review, the Court shares the Defendants' concern that the plumbing damage subclasses are not conducive to class certification.  However, the Court does not believe it would be proper to strike the Plaintiffs' class allegations at this stage of the proceedings.  This is because the Defendants' most compelling arguments against class certification go to the "predominance" requirement under Rule 23(b)(3).  Nevertheless, the Plaintiffs purport to be seeking class certification under both Rule 23(b)(2) and (b)(3) and, as a result, the inability to demonstrate predominance does not necessarily bar class certification.  Moreover, while not explicitly cited to in the FAC, the Plaintiffs have made class specific allegations that relate to the criteria set forth in Rule 23(b)(1).  In light of the foregoing, the Court will defer making any definitive rulings on the Plaintiffs' ability to obtain class certification until presented with an appropriate motion.

F.    The Court will not dismiss the FAC for being a "shotgun pleading"

The Defendants ask the Court to dismiss the FAC for being a "shotgun pleading." The Court disagrees.  The FAC contains 125 paragraphs of background allegations and approximately 75 paragraphs of allegations specific to Counts I through VIII.  Given the scope and complexity of the issues at hand, the allegations in the FAC are not excessively

redundant or confusing.  Stated simply, the FAC presents a "short and plain statement of the claim," and will not be dismissed for being a "shotgun pleading."

## IV.   Conclusion

Accordingly, it is

**ORDERED** that the Motions are **GRANTED IN PART AND DENIED IN PART**. Summary judgment is granted in favor of the Defendants on Count I of the FAC, and denied without prejudice as to Counts II through VIII.  The Defendants are directed to answer the FAC within twenty-one (21) days from entry of this order.  The Court will determine any additional issues pertaining to class certification upon a timely motion for class certification by the Plaintiffs.

**DONE** and **ORDERED** in Chambers, in Tampa, Florida this 22nd day of February, 2016.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Copies furnished to:

All Parties and Counsel of Record